# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### TYLER DIVISION

|  |  |
|---|---|
| **WEB 2.0 TECHNOLOGIES, LLC, AND PENNAR SOFTWARE CORPORATION** | **Case No. 6:25-cv-00059** |
| *Plaintiff*, | |
| v. | **JURY TRIAL DEMANDED** |
| **LONGVIEW REGIONAL MEDICAL CENTER** | |
| *Defendant*. | |

## DEFENDANT LONGVIEW REGIONAL MEDICAL CENTER'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

# TABLE OF CONTENTS

I.      INTRODUCTION ...................................................................................................6

II.     LEGAL STANDARD .............................................................................................7

    A.    A Claim for Patent Infringement must Allege Sufficient Detail to be
        Plausible on its Face.............................................................................................7

    B.    Abstract Ideas are Ineligible for Patenting Under the *Alice* Two-Step Test............8

    C.    A Plaintiff Must Have Proper Standing to Sue for Patent Infringement ................9

III.    ARGUMENT AND AUTHORITIES.....................................................................9

    A.    The Asserted Patents are Invalid as Directed to Ineligible Subject Matter ...........10

        1.    The '913 Patent ....................................................................................10

        2.    The '594 Patent ....................................................................................11

        3.    Claims 1 of the '913 and '594 Patents are Representative of All
            Claims of the Respective Patents.........................................................11

            **a.    The '913 Patent – Claim 1** ...........................................................11

            **b.    The '594 Patent – Claim 1** ............................................................12

        4.    The Asserted Patents are Invalid as Abstract Ideas Under § 101 .............13

            a.    *Alice* **Step 1:** ............................................................................13

            b.    *Alice* **Step 2:** ...........................................................................23

            c.    **Claim Construction is Not Required to Dismiss under
                Section 101** ...............................................................................25

    B.    Plaintiffs Plead No Basis for Infringement Prior to Expiration of the
        Asserted Patents .................................................................................................25

    C.    Plaintiff Web 2.0 Lacks Standing to Sue for Infringement of the Asserted
        Patents ...............................................................................................................26

IV.     CONCLUSION .....................................................................................................27

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alice Corp. Pty. Ltd. v. CLS Bank Intern.*,
    573 U.S. 208 (2014)................................................................................ *passim*

*Alps S., LLC v. Ohio Willow Wood Co.*,
    787 F.3d 1379 (Fed. Cir. 2015)..................................................................27

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)................................................................................7, 8

*Bancorp Servs., LLC v. Sun Life Assurance Co.*,
    687 F.3d 1266 (Fed. Cir. 2012)....................................................................8

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)....................................................................................7

*Bilski v. Kappos*,
    561 U.S. 593 (2010)................................................................................8, 9

*Content Extraction and Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*,
    776 F.3d 1343 (Fed. Cir. 2014)..................................................................21

*Cuvillier v. Sullivan*,
    503 F.3d 397 (5th Cir. 2007) ......................................................................8

*CyberSource Corp. v. Retail Decisions, Inc.*,
    654 F.3d 1366 (Fed. Cir. 2011)....................................................................9

*Decapolis Sys., LLC v. UT Sw. Health Sys.*,
    No. 2:22-cv-00159 ....................................................................................20

*Diamond v. Diehr*,
    450 U.S. 175 (1981)....................................................................................9

*Elec. Power Grp. LLC v. Alstom S.A.*,
    830 F.3d 1350 (Fed. Cir. 2016)..............................................................23, 24

*Enfish, LLC v. Microsoft Corp.*,
    822 F.3d 1327 (Fed. Cir. 2016)..............................................................18, 22

*Enzo APA & Son, Inc. v. Geapag A.G.*,
    134 F.3d 1090 (Fed. Cir. 1998)..................................................................27

*Epic Sys. Corp. v. Decapolis Sys., LLC*,
   2024 WL 5236918 (S.D. Fla. July 30, 2024) ........................................................................19

*Epic Sys. Corp. v. GreatGigz Sols., LLC*,
   2025 U.S. Dist. LEXIS 91870 (S.D. Fla. May 14, 2025) .......................................................20

*Ericsson Inc. v. TCL Commc'n Holdings Ltd.*,
   955 F.3d 1317 (Fed. Cir. 2020) ........................................................................................21, 23

*Intellectual Ventures I LLC & Intellectual Ventures II LLC v. J. Crew Group, Inc.*,
   No. 6:16-CV-196-JRG, 2016 WL 4591794 (E.D. Tex. Aug. 24, 2016) ................................18

*Kimble v. Marvel Entertainment, LLC*,
   576 U.S. 446 (2015) .............................................................................................................25

*Koninklijke KPN N.V. v. Gemalto M2M GmbH*,
   942 F.3d 1143 (Fed. Cir. 2019) ...........................................................................................22

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
   566 U.S. 66 (2012) ............................................................................................................8, 9

*Mentor H/S, Inc. v. Med. Device Alliance, Inc.*,
   240 F.3d 1016 (Fed. Cir. 2001) ........................................................................................9, 27

*Mobile Acuity, Ltd. v. Blippar Ltd.*,
   110 F.4th 1280 (Fed. Cir. 2024) ...........................................................................................25

*Morrow v. Microsoft Corp.*,
   499 F.3d 1332 (Fed. Cir. 2007) ...................................................................................9, 26, 27

*Mullen Industries LLC v. Samsung Elecs. Co., Ltd.*,
   Action No. 2:24-cv-00049-JRG, 2024 WL 4870768 (E.D. Tex. Nov. 21,
   2024) ................................................................................................................................7, 8

*Natural Alternatives International, Inc. v. Iancu*,
   904 F.3d 1375 (Fed. Cir. 2018) ...........................................................................................25

*Paradise Creations, Inc. v. UV Sales, Inc.*,
   315 F.3d 1304 (Fed. Cir. 2003) ........................................................................................9, 27

*Parker v. Flook*,
   437 U.S. 584 (1978) .............................................................................................................23

*People.ai, Inc. v. Clari Inc.*,
   No. 2022-1364, 2022-1366, 2023 WL 2820794 (Fed. Cir. Apr. 7, 2023) ............................18

*Planet Bingo, LLC v. VKGS LLC*,
   576 F. App'x 1005 (Fed. Cir. 2014) .....................................................................................12

*Pres. Wellness Techs. LLC v. Allscripts Healthcare Sols. Inc.*,
    684 F. App'x 970 (Fed. Cir. 2017) .................................................................19

*Pres. Wellness Techs. LLC v. Allscripts Healthcare Sols.*,
    No. 15-CV-1559, 2016 WL 2742379 (E.D. Tex. May 10, 2016).....................19, 25

*Recentive Analytics, Inc. v. Fox Corp.*,
    134 F.4th 1205 (Fed. Cir. 2025) ...............................................................9, 22, 23

*Salwan v. Iancu*,
    825 F. App'x 862 (Fed. Cir. 2020) .................................................................20

*In re Salwan*,
    No. 2023-1251, 2023 WL 5970782 (Fed. Cir. Sept. 14, 2023) .............................20

*In re TLI Commc'ns LLC Patent Litigation*,
    823 F.3d 607 (Fed. Cir. 2016).........................................................................24

*Torus Ventures LLC v. Cawley Partners, LLC*,
    No. 2:24-CV-00552-JRG, 2025 WL 1799327 (E.D. Tex. June 30, 2025) ..............22

*Ultramercial, Inc. v. Hulu, LLC*,
    772 F.3d 709 (Fed. Cir. 2014) (Mayer, J., concurring)..........................................8

*Web 2.0 Techs., LLC v. 37signals LLC*,
    No. 23-cv-0230, 2024 WL 1254221 (N.D. Ill. Mar. 25, 2024) .............................21

## Statutes

35 U.S.C. § 101 ....................................................................................... *passim*

35 U.S.C. § 154(a)(2) .....................................................................................25

35 U.S.C. § 271(a) .........................................................................................25

35 U.S.C. § 281 ....................................................................................6, 9, 27

## Rules

Fed. R. Civ. P. 12(b)(1).................................................................................7, 27

Fed. R. Civ. P. 12(b)(6) .............................................................................6, 7, 13

Defendant Longview Regional Medical Center ("Longview" or "Defendant") hereby moves to dismiss Plaintiffs Web 2.0 Technologies, LLC ("Web 2.0") and Pennar Software Corporation's ("Pennar") (collectively "Plaintiffs") First Amended Complaint for Patent Infringement pursuant to Federal Rule 12(b)(6), Federal Rule 12(b)(1), and 35 U.S.C. § 281 for lack of standing, and respectfully shows as follows:

## I.    INTRODUCTION

On February 26, 2025, Plaintiffs filed their initial complaint against Longview alleging infringement of U.S. Patent No. 9,465,913 (the "'913 Patent"). Longview timely served a Motion to Dismiss identifying three separate reasons that Plaintiffs' claims should be dismissed. Rather than address the deficiencies in its pleading, Plaintiffs elected to file a First Amended Complaint a mere day after Longview served its first Motion to Dismiss, realleging their original claims regarding the '913 Patent without any modification and adding a new infringement allegation for a similar patent, U.S. Patent No. 9,886,594 (the "'594 Patent" and collectively with the '913 Patent, the "Asserted Patents")).

This lawsuit is one of nine identical lawsuits Plaintiffs have brought against Texas hospitals, each based on expired patents that, at most, could support a damages period of less than one year. Plaintiffs' infringement allegations hinge on the theory that a hospital's compliance with long-established federal laws regarding electronic health records necessarily infringe the Asserted Patents. Yet, neither Plaintiffs nor any prior owner ever asserted the Asserted Patents during their lifetime or in the five years since these patents expired.

Plaintiffs' failure to bring suit on the Asserted Patents before now is not surprising, because these patents are directed to classic, patent-ineligible concepts—receiving, storing, and controlling access to a patient's health information (*i.e.*, a recordkeeping system that can be implemented by an office assistant and filing cabinet).  Indeed, patents directed to very similar subject matter as

6

the Asserted Patents have already been held abstract by other federal courts, including in the Eastern District of Texas. Accordingly, Longview files this Motion to Dismiss pursuant to Federal Rule 12(b)(6) because the Asserted Patents are invalid under 35 U.S.C. § 101 as being directed to ineligible subject matter.

Additionally, Longview files this Motion to Dismiss pursuant to Federal Rule 12(b)(6) because Plaintiffs have only accused Longview's **current** website of infringing the Asserted Patents, despite the fact that the Asserted Patents expired over five years ago.

Finally, Longview moves to dismiss Web 2.0 as a plaintiff under Federal Rule of Civil Procedure 12(b)(1) for lack of constitutional and statutory standing. The relevant patent assignment documents make clear that Web 2.0 holds neither title to the Asserted Patents nor any exclusionary rights with respect to Longview. As a result, Web 2.0 lacks standing to bring this case.

## II.    LEGAL STANDARD

### A.    A Claim for Patent Infringement must Allege Sufficient Detail to be Plausible on its Face

Under Federal Rule of Civil Procedure 12(b)(6), a complaint must be dismissed if it fails to state a claim upon which relief can be granted. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive dismissal, a complaint must plead sufficient factual matter to "state a claim to relief that is plausible on its face." *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A Rule 12(b)(6) motion may be based on failure to allege sufficient facts to support an inference of liability. *Mullen Industries LLC v. Samsung Elecs. Co., Ltd.*, Action No. 2:24-cv-00049-JRG, 2024 WL 4870768, at *1 (E.D. Tex. Nov. 21, 2024) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

Although factual allegations are taken as true, legal conclusions are given no deference— those matters are left for the court to decide. *See Ashcroft*, 556 U.S. at 678 (noting the tenet that

allegations are taken as true on a motion to dismiss "is inapplicable to legal conclusions"). "[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief [as a matter of law], this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Cuvillier v. Sullivan*, 503 F.3d 397, 401 (5th Cir. 2007) (internal citations and quotations omitted). The Complaint must establish more than the "sheer possibility" of infringement. *Ashcroft*, 556 U.S. at 678. The Complaint must also put the alleged infringer on notice of what activity is accused of infringement. *Mullen*, 2024 WL 48707678, at *2.

**B.      Abstract Ideas are Ineligible for Patenting Under the *Alice* Two-Step Test**

Patent eligibility under 35 U.S.C. § 101 is a threshold legal issue and may be resolved on a Rule 12(b)(6) motion when it is apparent from the face of the patent that the asserted claims are ineligible. *Bilski v. Kappos*, 561 U.S. 593, 602 (2010); *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 718–19 (Fed. Cir. 2014) (Mayer, J., concurring). Claim construction is not a prerequisite to resolving § 101 issues. *Bancorp Servs., LLC v. Sun Life Assurance Co.*, 687 F.3d 1266, 1273 (Fed. Cir. 2012).

A patent must claim a "new and useful process, machine, manufacture, or composition of matter." 35 U.S.C. § 101. "Laws of nature, natural phenomena, and abstract ideas are not patentable." *Alice Corp. Pty. Ltd. v. CLS Bank Intern.*, 573 U.S. 208, 216 (2014). Under *Alice*, courts determine patent eligibility using a two-step process. First, the court "determine[s] whether the claims at issue are directed to a patent-ineligible concept." *Id.* at 218. Second, the court "examine[s] the elements of the claim to determine whether it contains an 'inventive concept' sufficient to 'transform' the claimed abstract idea into a patent-eligible application." *Id.* at 221.

Transformation into a patent-eligible application requires "more than simply stating the abstract idea while adding the words 'apply it.'" *Id.* at 221 (quoting *Mayo Collaborative Servs. v.*

*Prometheus Labs., Inc.*, 566 U.S. 66, 72 (2012)). Indeed, if a claim could be performed in the human mind, or by a human using pen and paper, it is not patent-eligible. *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1372 (Fed. Cir. 2011). Also, a claim is not meaningfully limited if it includes only token or insignificant pre- or post-solution activity—such as identifying a relevant audience, category of use, field of use, or technological environment. *Mayo*, 566 U.S. at 78–79, 84–85; *Bilski*, 561 U.S. at 610; *Diamond v. Diehr*, 450 U.S. 175, 191–92 & n.14 (1981).

When evaluating software patents, step one determines whether the claims focus on a "specific asserted improvement in computer capabilities" or "on a process that qualifies as an **abstract idea** for which computers are invoked merely as a tool." *Recentive Analytics, Inc. v. Fox Corp.*, 134 F.4th 1205, 1212 (Fed. Cir. 2025) (emphasis in original). For step two, use of "a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention." *Alice*, 573 U.S. at 223.

### C.     A Plaintiff Must Have Proper Standing to Sue for Patent Infringement

A plaintiff must establish standing at the time the complaint is filed. Standing is both a constitutional requirement under Article III and a statutory requirement under the Patent Act, which limits enforcement rights to the "patentee"—defined as the original patentee and any successors in title. 35 U.S.C. §§ 100(d), 281; *Mentor H/S, Inc. v. Med. Device Alliance, Inc.*, 240 F.3d 1016, 1017 (Fed. Cir. 2001). The plaintiff must hold either title to the patent or all substantial rights—meaning rights that confer the ability to exclude others from practicing the invention. *Paradise Creations, Inc. v. UV Sales, Inc.*, 315 F.3d 1304, 1309 (Fed. Cir. 2003); *Morrow v. Microsoft Corp.*, 499 F.3d 1332, 1339–41 (Fed. Cir. 2007).

### III.     <u>ARGUMENT AND AUTHORITIES</u>

The Court should dismiss this lawsuit in its entirety because the Asserted Patents are invalid under 35 U.S.C. § 101 as being directed to an abstract idea. Alternatively, the Court should

dismiss this lawsuit because Plaintiffs have alleged only that Longview's ***current*** website infringes the Asserted Patents and fail to allege Longview engaged in any infringing conduct prior to the Asserted Patents' expiration on January 7, 2020. Finally, Plaintiff Web 2.0's claims must be dismissed because it lacks both constitutional and statutory standing to assert either of the Asserted Patents against Longview.

**A.    The Asserted Patents are Invalid as Directed to Ineligible Subject Matter**

The Asserted Patents are each directed to classic patent ineligible concepts—receiving, storing, and controlling access to a patient's health information (*i.e.*, a recordkeeping system that can be implemented by an office assistant and filing cabinet). There is no material difference between the two patents as it relates to an ineligible subject matter inquiry; however, Longview has provided an analysis of both Asserted Patents below (*see* '913 Patent and '594 Patent charts).

**1.    The '913 Patent**

The '913 patent, titled "Online Repository for Personal Information," belongs to a family of patents that date back to an original application filed on January 7, 2000. The '913 patent was issued on October 11, 2016, nearly a decade ago, and expired over five years ago, on January 7, 2020.

The '913 Patent describes "a method and a system for gathering, storing personal information on a server computer and releasing such information to authorized requesters." ('913 Pat., 2:34–38). The specification identifies an alleged then-existing problem: users had to repeatedly fill out forms to provide personal or demographic information, and the resulting data was often incomplete, inaccurate, or unverified. (*Id.* at 1:28–45; 2:14–22). The '913 Patent aims to automate and expedite this process by using computers to perform the same functions as before. (*Id.* at 2:35–38; *see also* Cl. 1).

The specification does not purport to teach any novel techniques for how to receive, store,

or transmit personal information, but instead simply teaches implementation of these steps with conventional hardware and software. (*Id.* at 4:5–13; 4:32–33; 5:22–28).

2.     **The '594 Patent**

The '594 patent, titled "Online Electronic Record," belongs to the same family of patents dating back to the original application filed on January 7, 2000. The '594 Patent issued on February 6, 2018 and also expired on January 7, 2020.

The '594 Patent describes "a method and system for gathering, storing personal information on a server computer and releasing such information to authorized requesters." ('594 Pat., 2:44–47). The specification states that sharing restricted information with others in a controlled manner or with a widespread audience is becoming an increasing need. (*Id.* at 1:66–2:4). The '594 Patent aims to automate and expedite this process by using computers to perform the same functions as before. (*Id.* at 2:49–54; *see also* Cl. 1).

The specification does not purport to teach any novel techniques for how to receive, store, update, or transmit personal information, but instead simply teaches implementation of these steps with conventional hardware and software. (*Id.* at 7:55–8:50).

3.     **Claims 1 of the '913 and '594 Patents are Representative of All Claims of the Respective Patents**

Plaintiffs allege that the Texas hospitals' use of electronic medical record software infringes at least Claim 1 of the '913 patent and Claim 1 of the '594 Patent. (First Amended Complaint, Dkt. No. 9, ¶¶ 28 and 36).

a.     **The '913 Patent – Claim 1**

The '913 Patent includes two independent claims—Claims 1 and 7—which are substantively identical. Claims 2 through 6 depend from Claim 1, and Claims 8 through 12 depend from Claim 7. Because all claims recite substantially similar limitations and are directed to the

same abstract idea, Claim 1 is properly treated as representative for purposes of the § 101 analysis.

Plaintiffs assert only Claim 1 of the '913 Patent against Longview. Claim 7, the only other independent claim, merely recites a generic "server computer system" configured to perform the same method set forth in Claim 1. As the Federal Circuit has explained, there may be no "meaningful distinction between the method and system claims" where "[t]he system claims recite the same basic process as the method claims." *Planet Bingo, LLC v. VKGS LLC*, 576 F. App'x 1005, 1007 (Fed. Cir. 2014). Claim 7 adds only conventional computer components—such as a server, processor, memory, and communication interface—and routine computer operations like account creation and data storage. These additions do not improve the functioning of a computer itself. As the Supreme Court held in *Alice*, "the system claims are no different from the method claims in substance." 573 U.S. at 226. The dependent claims fare no better, adding only minor or conventional limitations that also fail to enhance computer functionality.

### b. The '594 Patent – Claim 1

The same is true for the '594 Patent. Independent claims 1, 8, and 15 are substantively identical, with Claims 2 through 7 depending from Claim 1, Claims 9 through 14 depending from Claim 8, and Claims 16 through 19 depending from Claim 15. Because all claims recite substantially similar limitations and are directed to the same abstract idea, Claim 1 is properly treated as representative for purposes of the § 101 analysis.

Claim 1 is the only asserted claim of the '594 Patent. Claims 8 and 15, merely recite a generic "server computer system" and an "apparatus" configured to perform the same method set forth in Claim 1. For the same reasons set forth above for the '913 Patent, the additions to Claims 8 and 15 fail to improve the functioning of a computer itself and "are no different from the method claims in substance." *Alice*, 573 U.S. at 226. The dependent claims, similarly, add only minor or conventional limitations that are not directed to enhanced computer functionality.

####    4.    The Asserted Patents are Invalid as Abstract Ideas Under § 101

Plaintiffs' patent infringement claims should be dismissed because the claims of the Asserted Patents are directed to ineligible subject matter under 35 U.S.C. § 101. As shown herein, the asserted representative claims are directed to abstract ideas, and do not contain an "'inventive concept' . . . sufficient to ensure that the patent in practice amounts to *significantly more* than a patent upon the ineligible concept itself." *See Alice*, 573 U.S. at 217–18 (emphasis added) (internal citations omitted). Because Plaintiffs have failed to, and cannot plausibly, state a claim upon which relief may be granted as to the Asserted Patents' claims, Longview respectfully requests that the Court grant this Motion and dismiss this case with prejudice. FED. R. CIV. P. 12(b)(6).

a.    *Alice* **Step 1:**

Claim 1 of each Asserted Patent recites the abstract idea of receiving, storing, and controlling access to a patient's health information (*i.e.*, a recordkeeping system). Below are charts for Claim 1 of each Asserted Patent detailing the abstract idea each limitation represents as well as the analogous system used by humans for decades to perform these methods by hand:

| '913 Patent Claim 1 Language | Abstract Idea |
|---|---|
| 1. A computer-implemented method of permitting access to a patient's personal health record (PHR) stored in an online repository, the method comprising the following steps: | storing and permitting access to a patient's personal health record in a recordkeeping system<br><br>Example: having a filing cabinet for storing personal health records |
| establishing an account for a patient with a server computer, the account being associated with data storage area configured to store the patient's personal health information; | including patient information in the recordkeeping system<br><br>Example: placing a folder in filing cabinet and labeling it with the patient's name |

13

| | |
|---|---|
| receiving, via a first client computer operated by the patient, one or more pieces of the patient's personal health information; storing, in the data storage area associated with the account established for the patient, the one or more pieces of the patient's personal health information received from the patient, thereby creating a PHR for the patient; | receiving and storing patient's personal health information in the recordkeeping system<br><br>Example: placing documents in patient's folder in filing cabinet (e.g. patient medical history form, X-ray). |
| associating patient-established control settings with the patient's personal health information stored in the PHR, the patient-established control settings being configurable by the patient via the first client computer, wherein the patient-established control settings enable the patient to restrict access to the patient's personal health information to one or more designated requesters; | keeping the contents of patient's information confidential per patient's direction<br><br>Example: including signed authorizations from the patient in a folder, permitting others to receive copies of documents from patient's folder |
| receiving from a designated requester an access request via a second computer, the access request being accompanied by an identifier for the patient and authorization information to obtain at least a portion of the patient's PHR; | doctor or other provider requesting access to specific information in patient's folder<br><br>Example: doctor asking his/her office assistant (or hospital) for copy of patient's X-ray or lab test from patient's folder in filing cabinet |
| verifying the authorization information received from the second computer; | providing evidence that the requester is authorized to receive the requested information<br><br>Example: office assistant reviewing a HIPAA release form prior to providing documents from patient's folder |
| in accord with patient-established control settings, selecting a portion of the patient's PHR; and | providing only specific information to the requestor, instead of the entire patient record |

| | |
|---|---|
| | Example: office assistant selecting only specific documents within the patient's folder |
| sending to the second computer the selected portion of the patient's PHR stored in patient's account; | providing the relevant information to the requesting doctor<br><br>Example: office assistant providing specific document to requesting doctor (whether via paper copy or e-mail) |
| recording each and every access of the patient's PHR; | keeping track of who accesses the file<br><br>Example: patient's folder having access log at the front of the folder, which is filled out with information such as date, time, and who accessed the folder (or information provided to another medical center) |
| enabling access to the patient's PHR in case of a medical emergency involving the patient; | providing access to the patient's folder in case of emergency<br><br>Example: allowing access to patient's medical records (such as allergies, heart conditions, or list of current prescriptions) during emergency when patient is unable to sign appropriate forms |
| receiving and storing updates to the patient's personal health information, the updates being from a party authorized to make such update by the patient; and | adding information to the patient's medical records<br><br>Example: doctor adding notes, lab results, or updating prescription list after office visit |

| | |
|---|---|
| if the patient's PHR is changed, then automatically notifying the patient via an electronic message that a change has been made to the patient's PHR. | informing a patient when changes have been made to their records<br><br>Example: office assistant telling the patient that a new prescription (or X-ray, or lab result) has been added to their folder |

| '594 Patent Claim 1 Language | Abstract Idea |
|---|---|
| 1. A method comprising the following method steps performed by a server computer system: | |
| establish accounts for each of a plurality of users; | creating a patient's personal health record in a recordkeeping system<br><br>Example: having a filing cabinet for storing personal health records |
| receive from the client computer the first user's medical information; | receiving a patient's personal health information in the recordkeeping system<br><br>Example: receiving personal health records from a patient |
| if the first user does not have an account with the server computer system, then establish an account for the first user; | Checking to see if a personal health record already exists for a particular patient<br><br>Example: looking through the filing cabinet for the patient's file |
| store in the first user's account an indication of the first user's medical information; | storing patient's personal health information in the recordkeeping system<br><br>Example: placing documents in patient's folder in filing |

| | |
|---|---|
| | cabinet (e.g. patient medical history form, X-ray). |
| receive, from a second user, an update to the first user's medical information, the second user being authorized by the first user to make such update to the first user's medical information; | doctor or other provider requesting to update specific information in patient's folder<br><br>Example: specialist doctor asking to include a recent lab test in patient's folder in filing cabinet |
| verify the identity of the second user; | providing evidence that the requester is authorized to update the patient's personal health record<br><br>Example: office assistant reviewing a HIPAA release form prior to adding/subtracting documents to a patient's folder |
| store identifying information of the one or more users who approved or disapproved the update to the first user's medical information; | keeping track of who updates the patient's file<br><br>Example: patient's folder having access log at the front of the folder, which is filled out with information such as date, time, and who accessed the folder and what additions/subtractions were made |
| store the updated first user's medical information; and | Storing the updated information in the patient's folder in the filing cabinet<br><br>Example: adding the patient's lab test record in the patient's folder in the filing cabinet |
| automatically send the updated first user's medical information to a designated requester. | Sending the updated personal health record to a person requesting such record |

17

| | Example: providing the updated personal health record to the patient or to the patient's primary care physician. |
|---|---|

The representative claims are directed to the abstract idea of receiving, storing, and controlling access to a patient's health information. All of the steps of these claims could be performed by a human with a filing cabinet, which clearly indicates the claim is directed to an abstract idea. *See Intellectual Ventures I LLC & Intellectual Ventures II LLC v. J. Crew Group, Inc.*, No. 6:16-CV-196-JRG, 2016 WL 4591794, at *5 (E.D. Tex. Aug. 24, 2016) ("The Court next finds that the [patent] is directed toward the abstract idea of recommending products to customers based on purchase history . . . [i]t is not difficult for a sales clerk who keeps a filing cabinet of past customer transactions."); *see also People.ai, Inc. v. Clari Inc.*, No. 2022-1364, 2022-1366, 2023 WL 2820794, at *11 (Fed. Cir. Apr. 7, 2023) (describing patent claim as abstract as it "is merely a computerized version of a rolodex entry or file corresponding to an individual, such as a specific customer, in a filing cabinet").

### i.      Similar Claims Have Been Found to be Directed to an Abstract Idea by Other Courts

Claims directed to very similar subject matter as the representative claims have been found abstract in other cases, which alone can establish *Alice* step one. *Alice*, 573 U.S. at 221-22; *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1334 (Fed. Cir. 2016) ("Both this court and the Supreme Court have found it sufficient to compare claims at issue to those claims already found to be directed to an abstract idea in previous cases" to satisfy step 1 of the *Alice* inquiry). For example, in *Preservation Wellness*, Judge Bryson (sitting by designation in the Eastern District of Texas) granted the defendants' motions to dismiss, holding that claims directed to computerized systems

for maintaining patient medical records—with remote access for physicians and patients, and certain records accessible only to physicians—were abstract and ineligible under § 101. *Pres. Wellness Techs. LLC v. Allscripts Healthcare Sols.*, No. 15-CV-1559, 2016 WL 2742379, at *7, 13 (E.D. Tex. May 10, 2016). The court observed that maintaining medical records with differential access by physicians and patients had been a common practice in the medical field for many years, and that patients often contributed personal information while physicians supplemented records with test results and diagnostic notes. *Id.* at *7. The court held this practice was plainly an abstract idea under *Alice* and that using computers to store records, provide remote access, or control access rights did not make the abstract idea patentable. *Id.* The Federal Circuit affirmed. *Pres. Wellness Techs. LLC v. Allscripts Healthcare Sols. Inc.*, 684 F. App'x 970 (Fed. Cir. 2017). Here, the Asserted Patents are clearly directed to ideas analogous to those already found abstract in *Preservation Wellness*, including concepts such as receiving and storing updates to the patient's personal health information and requesting access to specific information in a patient's folder.

Similarly, in *Epic Systems Corp. v. Decapolis Systems, LLC*, the Southern District of Florida dismissed very similar claims under Rule 12, holding that patents directed to collecting, storing, and managing patient information—and notifying patients of access or changes—were abstract and patent-ineligible under § 101. 643 F. Supp. 3d 1347, 1354–56 (S.D. Fla. 2022), *aff'd*, 2024 WL 1460000 (Fed. Cir. Apr. 4, 2024). The court rejected the patent owner's argument that the patents claimed technological improvements, because the patents claimed no advancement in computer hardware. *Id.* at 1356. The case was later deemed exceptional under § 285, and attorneys' fees were awarded. *Epic Sys. Corp. v. Decapolis Sys., LLC*, 2024 WL 5236918, at *5 (S.D. Fla. July 30, 2024) (finding the "case law did not support [the patentee's] position that the

abstract notion of electronically systemizing patient records was a patentable subject matter" and that the claims were not directed to technological improvements). Subsequently, the Eastern District of Texas dismissed a parallel case involving the same patents and likewise awarded fees, finding a "clear lack of merit" under § 101. *Decapolis Sys., LLC v. UT Sw. Health Sys.*, No. 2:22-cv-00159, Dkts. 76, 94 (E.D. Tex. June 6, 2024); *see also Epic Sys. Corp. v. GreatGigz Sols., LLC*, 2025 U.S. Dist. LEXIS 91870 (S.D. Fla. May 14, 2025) (granting 12(c) motions and invalidating four asserted patents under § 101).

Additionally, in the *Salwan* line of cases, the Federal Circuit repeatedly held that claims directed to receiving and storing patient health information are abstract and patent-ineligible. In *In re Salwan*, the claims recited a "central server for processing and transferring patient health information stored in the one or more central data storages, and at least one device for providing user authorization to access patient data stored in the one or more central data storages, and configuring the central computer program or the central server for" communicating, receiving, storing, selectively retrieving and sharing patient health information to authorized groups or the patient for reviewing. 681 F. App'x 938, 939–941 (Fed. Cir. 2017). The Federal Circuit held the claims were directed to an abstract idea, explaining the claims "describe[] little more than the automation of a 'method of organizing human activity' with respect to medical information." (quoting *Alice*, 573 U.S. at 220). The Federal Circuit reached similar holdings in two subsequent cases. *Salwan v. Iancu*, 825 F. App'x 862, 863 (Fed. Cir. 2020); *In re Salwan*, No. 2023-1251, 2023 WL 5970782 (Fed. Cir. Sept. 14, 2023).

Finally, a case involving the parent patent to both Asserted Patents (U.S. Patent No. 6,845,448, the "'448 Patent"), the Northern District of Illinois found that claim 1 was directed to the abstract idea of "automatically disbursing personal information saved on a computer to an

20

approved requester." *Web 2.0 Techs., LLC v. 37signals LLC*, No. 23-cv-0230, 2024 WL 1254221, at *5 (N.D. Ill. Mar. 25, 2024). The '913 Patent is a continuation of the '448 Patent, shares the identical specification, and has a similar Claim 1. The '594 Patent is a continuation-in-part of the '448 Patent, contains a similar specification (including four identical figures), and has a similar Claim 1. The Northern District of Illinois held the claims merely used generic computer components to automate a conventional manual process and thus lacked patent-eligible subject matter. *Id.* The same is true for the Asserted Patents in this case.

### ii.    The Claims Are Directed to the Abstract Idea of Receiving, Storing and/or Controlling Access to Patient Information

Under *Alice* step one, the court must determine whether the patent claims an abstract idea. For example, a patent claim is directed to an abstract idea when it merely uses computers to perform "well-known" concepts that "humans have always performed." *Content Extraction and Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1347 (Fed. Cir. 2014). The representative claims of the Asserted Patents do nothing more than recite conventional and routine steps to carry out the abstract idea of receiving, storing, and controlling access to a patient's health information.

Claims directed to an activity that could be performed by the human mind or by using pen and paper fall under the category of an "abstract idea." *See Ericsson Inc. v. TCL Commc'n Holdings Ltd.*, 955 F.3d 1317, 1327 (Fed. Cir. 2020). The idea of receiving, storing, and controlling access to a patient's health information or records is exactly the type of "longstanding commercial practice" and "method of organizing human activity" that falls "squarely within the realm of 'abstract ideas.'" *Alice*, 573 U.S. at 220–21.

To avoid being an abstract idea, the claims must disclose "a specific implementation of a solution to a problem in the software arts" or "a specific means or method that solves a problem

in an existing technological process." *Recentive*, 134 F.4th 1205, 1213 (Fed. Cir. 2025) (quoting *Enfish LLC v. Microsoft Corp.*, 822 F.3d 1327, 1339 (Fed. Cir. 2016) and *Koninklijke KPN N.V. v. Gemalto M2M GmbH*, 942 F.3d 1143, 1150 (Fed. Cir. 2019), respectively). The use of "result-based functional language simply describes the desired result of [the claim] at a high level of generality and in an abstract way. This is insufficient." *Torus Ventures LLC v. Cawley Partners, LLC*, No. 2:24-CV-00552-JRG, 2025 WL 1799327, at *5 (E.D. Tex. June 30, 2025).

Here, the representative claims do not disclose any specifics about the operation of the software, any problem addressed by the software covered by the claims, or any solution to such problems. The representative claims also do not specify any implementation of the software, instead reciting only high-level functional language of receiving, storing, and controlling access to a patient's health information. Neither the claim nor the specification identifies any software problem that needs to be overcome, or how to overcome it. And neither the claim nor the specification describes any way to improve the computer system the software runs on, instead relying on generic client and server computers. Accordingly, the representative claims merely use functional language to describe the desired result "at a high level of generality and in an abstract way." *Id.*

As the above charts analyzing the elements of the representative claims make clear, the entirety of the claims are directed to the abstract idea of receiving, storing, and controlling access to a patient's health information, which is something that can be, and has been, accomplished by an office assistant, healthcare provider, and filing cabinet. (*See* "Examples" in '913 Patent and '594 Patent charts herein). Indeed, the representative claims do not require a single detail or technique about the computer, personal health record, online repository, account, data storage area, or personal health information. The claim does not require a single detail or technique relating to

22

control settings, how such settings are configurable, or how access would be restricted. The claim does not require a single detail or technique about the server computer, first client computer, or second computer (they are merely generic computers), the access request, the identifier, the authorization information, how to perform any verification, how files would be sent to a generic computer, what type of electronic message would be sent, or how such message would be sent.

That the claims are limited to a particular technological environment does not alter this analysis. "Most obviously, limiting the claims to [a] particular technological environment . . . is, without more, insufficient to transform them into patent-eligible applications of the abstract idea at their core." *Elec. Power Grp. LLC v. Alstom S.A.*, 830 F.3d 1350, 1354 (Fed. Cir. 2016). As the Supreme Court explained in *Alice*, the prohibition on patenting abstract ideas cannot be circumvented by attempting to limit the use of the idea to a particular technological environment. *Alice,* 573 U.S. at 222 (discussing *Parker v. Flook,* 437 U.S. 584 (1978)). The claims are directed to an abstract idea even if they are limited to being practiced on a patient's health records. Further, while the representative claims may use technical jargon, that does not mean they teach technical solutions. *See Ericsson Inc.*, 955 F.3d at 1326 (Fed. Cir. 2020) ("Although written in technical jargon, a close analysis of the claims reveals that they require nothing more than this abstract idea.").

b.    *Alice* **Step 2:**

Once the court determines claims are directed towards an abstract idea, the court assesses the claim elements "both individually and 'as an ordered combination'" to determine if the claims provide something "significantly more" than the abstract idea. *Recentive*, 134 F.4th at 1211. Here, the claims do not recite anything "significantly more" than the abstract idea of storing and/or updating, controlling access to, and distributing a patient's personal health record. *Alice* declares

that "electronic recordkeeping" is "one of the most basic functions of a computer." 537 U.S. at 225.

Additionally, the claims are implemented on generic computer technology and therefore do not contain an inventive concept sufficient to confer eligibility. There is simply nothing "inventive" about using a generic computer to manipulate information. As explained above, the abstract functional descriptions in the claims are devoid of any technical explanation as to how to implement the purported invention in an inventive way. *See In re TLI Commc'ns LLC Patent Litigation*, 823 F.3d 607, 615 (Fed. Cir. 2016) (claims failed *Alice*'s step 2 where specification limited its discussion of "additional functionality" of conventional components "to abstract functional descriptions devoid of technical explanation as to how to implement the invention").

The representative claims simply lack the details necessary to transform the abstract idea into something patent eligible. A "server computer" and "data storage area," for example, are inherent parts of implementing a recordkeeping system on a generic networked computer system and do not transform the abstract idea into patent eligibility. *See Alice*, 573 U.S. at 223–24 (stating a "wholly generic computer implementation" does not cause an abstract idea to become patentable). The claims fail to disclose how any operations are performed, or how, if at all, they advanced the underlying technology. In other words, "nothing in the claims, understood in light of the specification, requires anything other than off-the-shelf, conventional computer . . . technology." *Elec. Power Grp.*, 830 F.3d at 1355. There is thus no limitation that could be considered an inventive concept under step two of the *Alice* test.

All claims of the Asserted Patents are therefore invalid under §101.

c.    **Claim Construction is Not Required to Dismiss under Section 101**

Courts may decide § 101 issues at the pleading stage where claim construction would not affect the outcome. *See Pres. Wellness*, 2016 WL 2742379, at *6. Such is the case here because there is no reasonable construction of claim terms that would alter the eligibility analysis. If Plaintiffs believe otherwise, Plaintiffs have the burden of proposing a specific claim construction and explaining why any dispute must be resolved before the scope of the claims can be understood for purposes of avoiding dismissal under § 101. *See Mobile Acuity, Ltd. v. Blippar Ltd.*, 110 F.4th 1280, 1293–94 (Fed. Cir. 2024).

B.    **Plaintiffs Plead No Basis for Infringement Prior to Expiration of the Asserted Patents**

The Asserted Patents both expired on January 7, 2020. (First Amended Complaint, Exs. 1 and 3, Dkt. 9-1 and 9-3, at 2.) (twenty years from Jan. 7, 2000, their earliest-claimed priority date); *Natural Alternatives International, Inc. v. Iancu*, 904 F.3d 1375, 1383 (Fed. Cir. 2018) ("the standard patent term is twenty years after an application's earliest-claimed priority date") (citing 35 U.S.C. § 154(a)(2)). Plaintiffs' Complaint for Patent Infringement provided claim charts that accuse only the ***current*** version of Longview's website. (*See, e.g.*, First Amended Complaint, Exs. 2 and 4, Dkt. 9-2, at 59 and Dkt. 9-4, at 8 stating website "Last Modified: February 20, 2025"). The ***current*** version of Longview's website cannot infringe either of the Asserted Patents, which expired in January 2020. *See Kimble v. Marvel Entertainment, LLC*, 576 U.S. 446, 451 (2015) ("[W]hen the patent expires, the patentee's prerogatives expire too, and the right to make or use the article, free from all restriction, passes to the public."); *see also* 35 U.S.C. § 271(a) ("whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention ***during the term of the patent*** thereof, infringes the patent") (emphasis added).

25

Plaintiffs have not pled sufficient facts alleging that Longview infringed the Asserted Patents before they expired on January 7, 2020. This issue was squarely raised in Longview's initial Motion to Dismiss, served on July 28, 2025—before Plaintiffs filed their First Amended Complaint. Yet, Plaintiffs ignored the deficiency and simply repeated the same infringement allegations regarding the '913 Patent in their Amended Complaint. Worse still, they doubled down by asserting infringement of the '594 Patent, which has the same expiration date, and again cited Longview's current website in support of their allegations. Plaintiffs' claims should be dismissed.

### C.    Plaintiff Web 2.0 Lacks Standing to Sue for Infringement of the Asserted Patents

On December 31, 2022, Plaintiffs Pennar and Web 2.0 entered into an Agreement to Assign Rights to U.S. Patents (the "Assignment"), pursuant to which Pennar assigned to Web 2.0 a limited enforcement right under the '913 Patent—specifically, the right to assert the '913 Patent (amongst other patents) against a discrete list of named entities. (*See* Ex. A, Assignment, at Appendix B.) Longview is not one of those entities. *Id.* The Assignment did not transfer Web 2.0 title to the patent or grant Web 2.0 any enforcement rights with respect to Longview. Moreover, and more noteworthy, the Assignment fails to transfer any rights under the '594 Patent, which is nowhere to be found in the document. *Id.* Indeed, even Plaintiffs' counsel agrees Web 2.0 has no ownership interest the '594 Patent and that Pennar is the current owner. (*See* Ex. B, Declaration to Clarify Ownership, clarifying assignment did not pertain to the '594 Patent and the Pennar is the current owner).

Web 2.0's claim must be dismissed because it lacks both constitutional and statutory standing to litigate the Asserted Patents against Longview. The Federal Circuit has held that a plaintiff asserting patent infringement must hold either legal title to the patent or all substantial rights, including the right to exclude others from practicing the invention. *Morrow v. Microsoft*

*Corp.*, 499 F.3d 1332, 1339–41 (Fed. Cir. 2007); *Paradise Creations, Inc. v. UV Sales, Inc.*, 315 F.3d 1304, 1309 (Fed. Cir. 2003). Only a "patentee"—meaning the original patentee or its successor in title—has standing to sue under the Patent Act. 35 U.S.C. §§ 100(d), 281; *Mentor H/S, Inc. v. Med. Device Alliance, Inc.*, 240 F.3d 1016, 1017 (Fed. Cir. 2001).

Web 2.0 does not meet this standard. The assignment documents confirm that Web 2.0 holds no rights to the '594 Patent and only a limited enforcement right to the '913 Patent—specifically, the right to assert it against a defined list of named entities. Longview is not among that defined list. Web 2.0 thus falls within the category of plaintiffs the Federal Circuit in *Morrow* identified as lacking both legal title and exclusionary rights against the accused infringer. *Morrow*, 499 F.3d at 1340–41. Such entities lack constitutional standing and cannot participate in a patent infringement suit. *Id.* at 1341.

Moreover, standing must exist at the time a complaint is filed and cannot be cured retroactively by a nunc pro tunc assignment or later-acquired rights. *Alps S., LLC v. Ohio Willow Wood Co.*, 787 F.3d 1379, 1384 (Fed. Cir. 2015); *Enzo APA & Son, Inc. v. Geapag A.G.*, 134 F.3d 1090, 1093 (Fed. Cir. 1998). Web 2.0's lack of standing at the time of filing is therefore fatal to its claims.

Because Web 2.0 holds neither legal title to the Asserted Patents nor any exclusionary rights with respect to Longview, it lacks both constitutional standing under Article III and statutory standing under 35 U.S.C. § 281. Accordingly, the Court should dismiss Web 2.0's claims under Federal Rule of Civil Procedure 12(b)(1) and § 281 of the Patent Act.

## IV.    CONCLUSION

For the above and foregoing reasons, Longview respectfully requests that the Court dismiss Plaintiffs' Complaint for Patent Infringement and grant any such further relief the Court deems just and proper.

Dated: August 12, 2025

Respectfully submitted,

BRACEWELL LLP
By: /s/ Conor M. Civins
Conor M. Civins
Texas Bar No. 24040693
conor.civins@bracewell.com
Michael Chibib
Texas Bar No. 00793497
michael.chibib@bracewell.com
Christopher J. Mierzejewski
Texas Bar No. 24070270
chris.mierzejewski@bracewell.com
111 Congress Ave. Suite 2300
Austin, TX 78701
Telephone: (512) 472-7800

ATTORNEYS FOR LONGVIEW REGIONAL MEDICAL CENTER

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing document was served on August 12, 2025 upon all counsel of record via email.

By: */s/ Conor M. Civins*
Conor M. Civins