## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## TYLER DIVISION

| | |
|---|---|
| Web 2.0 TECHNOLOGIES, LLC, AND PENNAR SOFTWARE CORPORATION, | |
| **Plaintiffs,** | Civil Action No. 6:25-cv-00059-JCB |
| **v.** | **JURY TRIAL DEMANDED** |
| LONGVIEW REGIONAL MEDICAL CENTER, | |
| **Defendant.** | |

**PLAINTIFFS WEB 2.0 TECHNOLOGIES, LLC AND PENNAR SOFTWARE CORPORATION'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

Dated: August 26, 2025

DEVLIN LAW FIRM LLC

*/s/ Robert Kiddie*
Robert Kiddie (TX Bar. No. 24060092)
1526 Gilpin Avenue
Wilmington, Delaware 19806
Telephone: (302) 449-9010
Facsimile: (302) 353-4251
rkiddie@devlinlawfirm.com

*Attorney for Plaintiffs*

# TABLE OF CONTENTS

I.     INTRODUCTION.................................................................................... 1

II.    BACKGROUND .................................................................................. 4

    A.    Procedural History................................................................ 4

    B.    Technology and Patent in Suit ............................................. 5

III.    LEGAL STANDARDS ....................................................................... 6

    A.    Failure to State a Claim Under Fed. R. Civ. Pro. 12(b)(6)................. 6

    B.    Determining Patent Eligibility Under 35 U.S.C. § 101 ......................... 7

IV.    ARGUMENT ....................................................................................... 9

    A.    The Asserted Claims are Directed to Patentable Subject Matter ........ 9

        1.    Defendant's *Alice* Step One Analysis Mischaracterizes the Asserted Claims at Too High a Level of Abstraction Ignoring Critical Claimed Structures Used to Carry Out All Recited Method Steps ................................................................. 9

        2.    Defendant's *Alice* Step One Case Law Analysis is Infected By Its Overgeneralization of Asserted Patent Claims ................... 12

        3.    Defendant's *Alice* Step Two Analysis Fails to Consider the Unconventional System and Method Allowing Authorization to Access Discrete Portions of Electronically Stored Health Information ................................................................. 17

        4.    The First Amended Complaint Alleges That Defendant's Accused Instrumentalities Complied With The Relevant Statutory and Regulatory Standards At All Relevant Times . 21

V.    LEAVE TO AMEND.......................................................................... 21

VI.    CONCLUSION .................................................................................. 21

# TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).................................................................................. 8

*BASCOM Global Internet Servs. v. AT&T Mobility, LLC*,
  827 F.3d 1341 (Fed. Cir. 2016)............................................................... 25

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)............................................................................ 7, 8

*Berkheimer v. HP Inc.*,
  881 F.3d 1360 (Fed. Cir. 2018).................................................... 10, 21, 25

*Cellspin Soft., Inc. v. Fitbit, Inc.*,
  927 F.3d 1306 (Fed. Cir. 2019)............................................................ 9, 10

*Content Extraction & Transmission, LLC*,
  776 F.3d 1343 (Fed. Cir. 2014)...................................................... 19, 20, 21

*Emerging Auto LLC v. Kia Corp.*,
  Civ. A. No. 2:23-cv-0437-JRG; 2025 U.S. Dist. LEXIS 59840 (E.D. Tex. March 28, 2025).. 9,
  10, 11, 12

*Epic Sys. Corp. v. Decapolis Sys., LLC*,
  643 F. Supp. 3d 1347 (S.D. Fla. 2022) ................................................. 17, 18

*Ericsson Inc. v. TCL Commc'n Holdings Ltd.*,
  955 F.3d 1317 (Fed. Cir. 2020)............................................................... 21

*Hammers v. Mayea-Chang*,
  No. 2:19-cv-181,
  2019 WL 6728446 (E.D. Tex. Dec. 11, 2019)............................................. 6

*Health Discovery Corp. v. Intel Corp.*,
  577 F. Supp. 3d 570 (W.D. Tex. 2021).............................................. 21, 25

In re Salwan I
  681 Fed. Appx. 938 (Fed. Cir. 2017)....................................................... 18

In re Salwan II
  825 Fed. Appx. 862 (Fed. Cir. 2020)....................................................... 18

*In re TLI Commc'ns LLC Patent Litigation*,
  823 F.3d 607 (Fed. Cir. 2016)................................................................. 24

*Intellectual Ventures I LLC & Intellectual Ventures II LLC v. J. Crew Group, Inc.*,
  No. 6:16-CV-196-JRG, 2016 WL 4591794 (E.D. Tex. Aug. 24, 2016)................... 15

*Koninklijke KPN NV v. Gemalto M2M GmbH*,
  942 F.3d 1143 (Fed. Cir. 2019).............................................................. 22

*Lifetime Indus., Inc. v. Trim-Lok, Inc.*,
  869 F.3d 1372 (Fed. Cir. 2017)............................................................... 7

*Lormand v. US Unwired, Inc.*,
   565 F.3d 228 (5th Cir. 2009) ............................................................................... 9

*McOm IP, LLC v. Woodforest Nat'l Bank*,
   Civ. No. 6:21-cv-989-ADA; 2022 U.S. Dist. LEXIS 252864 (W.D. Tex. April 14, 2022) ..... 13

*McRO, Inc. v. Bandai Namco Games Am. Inc.*,
   837 F.3d 1299 (Fed. Cir. 2016).......................................................................... 11

*Motiva Pats., LLC v. Sony Corp.*,
   No. 9:18-CV-00180-JRG-KFG,
   2019 WL 4737051 (E.D. Tex. Sept. 27, 2019) .......................................................... 8

*Multimedia Techs. Pte. Ltd. v. LG Elecs. Inc.*,
   No. 2:22-cv-00494-JRG-RSP,
   2024 WL 1340360 (E.D. Tex. Mar. 1, 2024) ............................................................. 8

*Nearby Sys. LLC v. Penney Opco LLC*,
   Civ. A. No. 2:23-cv-00384-JRG-RSP; 2024 U.S. Dist. LEXIS 204762 (W.D. Tex. Sept. 10,
   2024) .......................................................................................... passim

*O'Daniel v. Indus. Serv. Sols.*,
   922 F.3d 299 (5th Cir. 2019) ............................................................................... 6

*Packet Intel, LLC v. NetScout Sys., Inc.*,
   965 F.3d 1299 (Fed. Cir. 2020)........................................................................... 12

*People.ai, Inc. v. Clari Inc.*,
   No. 2022-1364, 2022-1366, 2023 WL 2820794 (Fed. Cir. Apr. 7, 2023)............................... 16

*PPS Data, LLC v. Jack Henry & Assocs.*,
   404 F. Supp. 3d 1021 (E.D. Tex. 2019). .............................................................. 9, 13

*Pres. Wellness Techs. LLC v. Allscripts Healthcare Sols.*,
   No. 15-cv-1559, 2016 WL 2742379 (E.D. Tex. May 10, 2016) ....................................... 16, 17

*Recentive Analytics, Inc. v. Fox Corp.*,
   134 F.4th 1205 (Fed. Cir. 2025) ......................................................................... 21

*SAP Am., Inc. v. InvestPic, LLC*,
   898 F.3d 1161 (Fed. Cir. 2018)............................................................................ 8

*Script Sec. Sols. L.L.C. v. Amazon.com, Inc.*,
   170 F. Supp. 3d 928 (E.D. Tex. 2016) .................................................................... 7

*Skinner v. Switzer*,
   562 U.S. 521 (2011).......................................................................................... 7

*Torus Ventures LLC v. Cawley Partners, LLC*,
   No. 2:24-CV-00552-JRG, 2025 WL 1799327 (E.D. Tex. June 30, 2025) ............................... 22

*US Synthetic Corp. v. ITC*,
   128 F.4th 1272 (Fed. Cir. 2025) .......................................................................... 9

*Web 2.0 Techs., LLC v. 37signals LLC*,
   2024 WL 1254221 (Dkt. 18 at 15-16) .................................................................... 19

iv

*Zenith Radio Coro. v. Hazeltine Research, Inc.*,
  401 U.S. 321 (1971) ............................................................................................................ 27
*Zenith Radio Corp. v. Hazeltine Research, Inc.*,
  401 U.S. 321 (1971) ............................................................................................................ 12

## <u>LOCAL RULE CV-7 RESPONSE TO STATEMENT OF ISSUES</u>

Plaintiffs maintain that the issue before the court is whether to deny Defendant's Motion to Dismiss the Amended Complaint under Federal Rule of Civil Procedure 12(b)(6) and 35 U.S.C. § 101, because Plaintiffs First Amended Complaint states a plausible claim of infringement, the Asserted Patents are directed to patent-eligible subject matter, and Plaintiff Web 2.0 has standing.

## I.    <u>INTRODUCTION</u>

Plaintiffs Web 2.0 Technologies, LLC and Pennar Software Corporation respectfully submit their Opposition to Defendant's Motion to Dismiss Plaintiffs' First Amended Complaint. (Dkt. 11-1.)  Defendant argues that the asserted claims are "directed to a classic patent ineligible concept—receiving, storing, and controlling access to personal health information." (Dkt. 11-1 at 1.)  But Defendant's analysis under the framework established in *Alice Corp. Pty. Ltd. v. CLS Bank Intern.*, 573 U.S. 208 (2014), suffers from numerous problems.

First, infecting its entire motion, Defendant's *Alice* step one analysis runs counter to the Supreme Court's admonition for courts not to improperly characterize the asserted claims at too high a level of abstraction.  *Nearby Sys. LLC v. Penney Opco LLC*, Civ. A. No. 2:23-cv-00384-JRG-RSP; 2024 U.S. Dist. LEXIS 204762 *3 (W.D. Tex. Sept. 10, 2024) (citing *Alice*, 573 U.S. at 217).  Contrary to Defendant's verb-focused analysis, the asserted claims recite far more than merely "receiving, storing, and controlling access" to personal health information. (Dkt. 11-1 at 1.)  Throughout its motion, Defendant repeatedly ignores the majority of the claim language that recites numerous system components and the manner in which those components are configured to interact—creating structures such as an "electronic health record" within the claimed server system that not only stores a patient's health information, but allows the patients to associate discrete portions of those private health records with specific levels of authorization.  The claimed methods thereby claim a specific method to ensure that only certain patient-authorized users may access and/or modify only certain portions of the patient's electronically stored information.

At the same time, the claimed methods also provide a system for recording all users that access and/or modify the patient's records, and notify patients when the private health records are modified, or if any unauthorized breaches of the private health records occur.  (Dkt. 16-1, claim 1;

Dkt. 16-3, claim 1.)  The common patent specification discloses how such electronic health record systems faced industry concerns over storage and security of such sensitive medical information, and provided systems that enabled improved methods for ensuring proper patient authorization for other users to access and/or modify discrete portions of those electronic health records.  These improvements were later adopted under various standards such as HIPAA, CEHRT, and Meaningful Use, (Dkt. 16 at ¶¶8-16), and further distinguish the asserted claims from the abstract, patent-ineligible systems Defendant seeks to analogize throughout its motion, as discussed below.

Second, Defendant's *Alice* step two analysis utterly fails to consider the unconventional arrangement of claimed system components configured to provide methods which, as disclosed and claimed in the Asserted Patents, addressed the real-world problems faced at the time of the invention.  Specifically, the patent specification describes an electronic record system that addresses "the need for a system which allows a classification of information according to a security or other hierarchical class structure" that "provides the classified information to only those entities that . . . are authorized by a person who owns the information."  (Dkt. 16-1 at 2:5-9; 40-61.)  As the Asserted Patents disclose and claim, such a system configures a database to store a variety information including "health related information" such as "types of medication currently used, surgeries undergone, types of drugs that tend to cause allergic reactions, smoking/drinking habits, hospitalization information, status of the several parts of the body, family medical history, etc."  (Dkt. 16-1 at 7:36-42.)  The Asserted Patent's specification describes how it arranged and configured the components in the improved system and how that arrangement enabled the claimed methods allowing patients to designate specific portions of their private electronic health records stored in a server, and to designate different levels of authorization for other users of the system

2

to access and/or modify specific portions of the stored electronic health information, as desired. (Dkt. 16-1 at 2:5-13.)

Defendant's separate argument that the First Amended Complaint fails to state a plausible claim, (Dkt. 11-1 at 2), ignores Plaintiffs' claim charts for each of the Asserted Patents, which include an element-by-element analysis explaining how Defendant's descriptions of its electronic health record system—*e.g.*, websites that show the establishment of accounts, storing of patient electronic health information, patient authorization and/or restrictions to other user's access, and various privacy and/or notification features—infringe the asserted claims. Plaintiffs' claim charts, like the First Amended Complaint, also allege the various statutory and regulatory standards required under, for example, HIPAA/CEHRT/Meaningful Use frameworks that, upon information and belief, Defendant's electronic health record system has been certified to meet at all relevant times. (Dkt. 16 at ¶¶8-16.) As such, and contrary to Defendant's Motion, Plaintiffs' First Amended Complaint not only sets forth a plausible claim of infringement based on analysis of Defendant's electronic health record system, it also alleges how that electronic health record systems have been certified in compliance with relevant statutory and regulatory standards at all relevant times, further supporting the plausibility of its infringement of the Asserted Patents. Moreover, to the extent Defendant argues that its Accused Instrumentalities do not "automatically" notify patients as required by "federal regulation," (Dkt. 11-1 at 3), it demonstrates how issues of claim construction and/or fact may yet require resolution, further supporting denial of Defendant's motion as set forth below.

Defendant also states that Plaintiff Web 2.0 is not a proper party to this lawsuit because it lacks standing. (Dkt. 11-1 at 3.) However, all rights to the Asserted Patents were initially assigned by the inventors to Pennar Software as part of their applications for patent. (Ex. 1 (assignment in

'913); Ex 2 (assignment in '594).) Pennar thereafter assigned certain rights to some of Pennar's patents to Web 2.0, including the '913 patent, on December 31, 2022. Ex. 3 (Web 2.0 Assignment.) Despite that assignment, however, Pennar still retains interest in the '913 patent.  Accordingly, both Pennar and Web 2.0 maintain interest in the ''913 and both are properly named parties. Regarding the '594 patent, Web 2.0 was not assigned rights to that patent via the December 31, 2022 assignment, and Pennar retains all rights in the '594 patent.  Moreover, even if the court were to determine that Web 2.0 has no interest in either Asserted Patent, the appropriate course of action for such misjoinder would be to dismiss Web 2.0, and not dismiss the underlying action as Defendant suggests. However, because Web 2.0 has rights under the '913 patent, it has standing.

 For at least these reasons, the Court should deny Defendant's Motion.

I.    BACKGROUND

A.    Procedural History

Plaintiffs filed their original complaint on February 26, 2025, asserting U.S. Patent No. 9,465,913, against Defendant's Accused Instrumentalities, (Dkt. 1), and on July 29, 2025, Plaintiffs filed their First Amended Complaint asserting U.S. Patent No. 9,886,594, also against Defendant's Accused Instrumentalities.  (Dkt. 9.)  Defendant filed a Motion to Dismiss the Original Complaint on July 25, 2025.  (Dkt. 7-1.)  Following Plaintiffs' filing of its First Amended Complaint on July 29, 2025, Defendant filed its pending Motion to Dismiss the Amended Complaint on August 8, 2025.  (Dkt. 11-1.)

Defendant bemoans Plaintiffs' "lawsuit is one of nine identical lawsuits Plaintiffs have brought against Texas hospitals, each based on expired patents that, at most, could support a damages period of less than one year.  (Dkt. 11-1 at 6.)  But regardless, there are no exceptions to patent infringement based on an infringer being a hospital or from respecting the Asserted Patents.

Especially given that their inventor, Mr. Chaganti, disclosed and claimed in 2000, the valuable claimed systems and methods for medical providers to overcome issues related to patient privacy and adopt more efficient electronic health record systems configured to permit a patient to determine authorizations for other users to access and/or modify discrete portions of that patient's electronically stored health records.  Such system features and methods were later adopted in various statutory and regulatory standards, with which Defendant admits hospitals comply.  (Dkt. 9 at ¶¶8-16; Dkt. 11-1 at 2.)

Defendant's certified electronic health record system, which it has used and made available to its patients during all relevant times, infringed the Asserted Patents, as Plaintiffs set forth in its element-by-element analysis in its First Amended Complaint.  (Dkt. 9-2 and 9-4.).  Moreover, Plaintiffs' First Amended Complaint also alleges that Defendant has maintained, used, and provided patients with its electronic health record system(s) that are, and were at all relevant times, certified to comply with various statutory and regulatory standards under frameworks such as HIPAA, CEHRT, and Meaningful Use.  (Dkt. 9 at ¶¶8-16.)  Accordingly, there can be little doubt that the Asserted Claims are directed to specific solutions to technical problems associated with electronically stored health record systems.

Defendant benefitted financially from its real-world infringement of the Asserted Patents, and should not avoid liability now by arguing the claimed methods are patent-ineligible abstract ideas under *Alice*, or that the First Amended Complaint is insufficient under the *Iqbal/Twombly* plausibility standard.

### B.    Technology and Patent in Suit

The claims of both Asserted Patents, U.S. Patent No.  9,465,913 ("the '913 patent") and U.S. Patent No. 9,886,594 ("the '594 patent"), are directed generally to systems and methods for

improving electronic health record systems that provide real-world technical solutions to problems faced by users and providers of electronically stored health record systems.

## II.    LEGAL STANDARDS

For a motion to dismiss, the Court must "accept all well-pleaded facts in the complaint as true and view the facts in the light most favorable to the plaintiff." *O'Daniel v. Indus. Serv. Sols.*, 922 F.3d 299, 304 (5th Cir. 2019) (internal citation omitted). "When deciding a [dispositive motion], the Court may consider undisputed facts outside of the pleadings, such as affidavits or declarations, but must draw all reasonable inferences and resolve factual conflicts in favor of the non-moving party." *Hammers v. Mayea-Chang*, No. 2:19-cv-181, 2019 WL 6728446, at *4 (E.D. Tex. Dec. 11, 2019).

### A.    Failure to State a Claim Under Fed. R. Civ. Pro. 12(b)(6)

For patent infringement, a complaint must simply "place the alleged infringer on notice of what activity is being accused of infringement." *Lifetime Indus., Inc. v. Trim-Lok, Inc*., 869 F.3d 1372, 1379 (Fed. Cir. 2017). However, the plaintiff need not *prove* its case at the pleading stage. *Id.*; *Nearby Sys.*, 2024 U.S. Dist. LEXIS 204762 *7.

The question on a Rule 12(b)(6) motion to dismiss is not whether the plaintiff will prevail on its claims, "but whether [the] complaint was sufficient to cross the federal court's threshold." *Script Sec. Sols. L.L.C. v. Amazon.com, Inc.*, 170 F. Supp. 3d 928, 935 (E.D. Tex. 2016) (citing *Skinner v. Switzer*, 562 U.S. 521, 530 (2011)). Viewing the facts most favorably to the plaintiff, "the court must then decide whether those facts state a claim for relief that is plausible on its face." *Id*. The plausibility standard "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of [the claim]." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007); *Multimedia Techs. Pte. Ltd. v. LG Elecs. Inc.*, No. 2:22-cv-00494-JRG-RSP, 2024 WL

1340360, *1 (E.D. Tex. Mar. 1, 2024). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*citing Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).  "[W]here the relevant information is beyond the access of the plaintiff, courts should generally permit discovery to proceed unless the complaint recites no more than sheer speculation about the plaintiff's entitlement to relief." *Motiva Pats., LLC v. Sony Corp.*, No. 9:18-cv-00180-JRG-KFG, 2019 WL 4737051, *4 (E.D. Tex. Sept. 27, 2019).

**B.    Determining Patent Eligibility Under 35 U.S.C. § 101**

Although patent eligibility is a question of law, it is often based on underlying facts. *Nearby Sys.*, 2024 U.S. Dist. LEXIS 204762 *4 (citing *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1166 (Fed. Cir. 2018)).  Moreover, because a patent is presumed valid under 35 U.S.C. §282, Defendant must prove invalidity, even patent ineligibility under 35 U.S.C. §101, by clear and convincing evidence.  *See US Synthetic Corp. v. ITC*, 128 F.4th 1272, 1284 (Fed. Cir. 2025) (citing *Cellspin Soft., Inc. v. Fitbit, Inc*., 927 F.3d. 1306, 1319 (Fed. Cir. 2019)  ("To the extent the district court departed from this principle by concluding that issued patents are presumed valid but not presumed patent eligible, it was wrong to do so.")); *PPS Data, LLC v. Jack Henry & Assocs.*, 404 F. Supp. 3d 1021, 1030 (E.D. Tex. 2019).

In the Fifth Circuit, motions to dismiss "are viewed with disfavor and are rarely granted." *Lormand v. US Unwired, Inc*., 565 F.3d 228, 232 (5th Cir. 2009) (citation omitted).  Determination of patent eligibility at the pleading stage is particularly disfavored because "'[t]he questions of whether a claim element or combination of elements is well understood, routine and conventional to a skilled artisan is a question of fact' that must be 'proven by clear and convincing evidence.'" *Emerging Auto*, 2025 U.S. Dist. LEXIS 59840 *9 (citing *Berkheimer v. HP Inc.*, 881 F.3d 1360,

1368 (Fed. Cir. 2018)); *Nearby Sys.*, 2024 U.S. Dist. LEXIS 204762 *4 (citing *Aatrix Software, Inc. v Green Shades Software, Inc.*, 882 F.3d 1121, 1128 (Fed. Cir. 2018).  Such "factual disputes about whether an aspect of the claims is inventive may preclude dismissal at the pleadings stage under §101." *Emerging Auto*, 2025 U.S. Dist. LEXIS 59840 *9 (citing *Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1318 (Fed. Cir. 2019)).

Courts use the two-step framework for determining whether claims are directed to patent-ineligible subject matter as set forth in the Supreme Court's decision in *Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208, 217-18 (2014).  *See Nearby Sys. LLC v. Penney Opco LLC*, Civ. A. No. 2:23-cv-00384-JRG-RSP; 2024 U.S. Dist. LEXIS 204762 *3 (E.D. Tex. Sept. 11, 2024).

First, courts "determine whether the claims at issue are directed to a patent ineligible concept." *Id.* (citing *Alice*, 573 U.S. at 217).  "In doing so, the court must be wary not to over generalize the invention, as 'all inventions . . . embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas.'"  *Id*.  Thus, "[t]o do so, the Court looks to the claims' 'character as a whole.'" *Emerging Auto LLC v. Kia Corp.*, Civ. A. No. 2:23-cv-0437-JRG; 2025 U.S. Dist. LEXIS 59840 *8 (E.D. Tex. March 28, 2025) (citing *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335 (Fed. Cir. 2016)). Recognizing that "all claims embody abstract ideas and other ineligible subject matter at some level, the Court's task is to examine 'whether the claims [] focus on a specific means or method that improves the relevant technology or are instead directed to a result or effect that itself is the abstract idea and merely invoke generic process and machinery.'" *Id.* (citing *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1314 (Fed. Cir. 2016)).  "In cases like this, the Court is to 'consider the claims as a whole . . . in light of the specification . . . [and] whether the focus of the claims is on a specific asserted improvement in computer capabilities or, instead, on a process that qualifies as an abstract idea for which

computers are invoked merely as a tool.'" *Id.* (citing *Packet Intel, LLC v. NetScout Sys., Inc.*, 965 F.3d 1299, 1309 (Fed. Cir. 2020)).

If this first threshold determination is met, [courts] move to the second step of the *Alice* inquiry and consider the elements of the claims, both individually and in combination, to determine whether the additional elements transform the nature of the claims into a patent-eligible application.  *Id.*  (citing *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1334 (Fed. Cir. 2016)).

It is well established that "the grant of leave to amend the pleadings pursuant to Rule 15(a) is within the discretion of the trial court." *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330 (1971). "The court should freely give leave when justice so requires. Rule 15(a)(2).

## III.    ARGUMENT

### A.    The Asserted Claims are Directed to Patentable Subject Matter

#### 1.    Defendant's *Alice* Step One Analysis Mischaracterizes the Asserted Claims at Too High a Level of Abstraction Ignoring Critical Claimed Structures Used to Carry Out All Recited Method Steps

Defendant contends that "[t]he Asserted Patents are each directed to classic patent ineligible concepts—receiving, storing, and controlling access to a patient's health information" (Dkt. 11-1 at 10.)  But as the U.S. Supreme Court cautioned in *Alice*, and as the Federal Circuit and courts in this district have repeatedly recognized with respect to *Alice* step one, in determining whether claims are directed to an abstract idea, the court must be wary not to over generalize the invention—precisely as Defendant urges here.  *See Alice*, 573 U.S. at 217; *McOm IP, LLC v. Woodforest Nat'l Bank*, Civ. No. 6:21-cv-989-ADA; 2022 U.S. Dist. LEXIS 252864 *16 (W.D. Tex. April 14, 2022) ("The Court finds that this impermissibly overgeneralizes the claims, characterizing them at too high a level of abstraction, 'untethered from the language of the claims.'") (citing *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1337 (Fed. Cir. 2016)).

9

At the outset, Defendant presumptively argues that claim 1 of the '913 patent is representative of all claims in the Asserted Patents, thereby showcasing its overgeneralization of the claims as a whole. (Dkt. 11-1 at 11.) Although courts may treat a claim as representative for purposes of its analysis under §101, each claim is presumed valid and must be considered individually, and the burden remains on Defendant to demonstrate invalidity of each claim by clear and convincing evidence. *See PPS Data, LLC v. Jack Henry & Assocs.*, 404 F. Supp. 3d 1021, 1030 (E.D. Tex. 2019). However, for purposes of this discussion—and to highlight Defendant's improper overgeneralization of the claims under *Alice* step one, Plaintiffs will address claim 1 of the '913 patent without conceding it is representative.

Defendant's improper overgeneralization of the claims ignores several critical limitations that demonstrate that Asserted Patents are not directed to patent-ineligible concepts, but rather are directed to non-abstract improvements to systems and methods that store electronic health records, and solve technology-based problems related to patient privacy and authorizations for others to access and/or modify discrete portions of the patient's electronically stored health information. Indeed, as Plaintiffs alleged in their First Amended Complaint, the systems and methods disclosed and claimed in the Asserted Patents were later implemented through various statutory and regulatory standards for electronic health record systems such as those under HIPAA, CEHRT, and Meaningful Use criteria. (Dkt. No. 9 at ¶¶8-16.) Defendant admits as much in its motion, (No. 11-1 at 6), and consequently, there can be little doubt that the Asserted Claims are directed to specific real-world solutions to technical problems associated with improving use of electronic health record systems.

By far the clearest example of Defendant's overgeneralized characterization of the claims of the Asserted Patents, and which infects Defendant's entire *Alice* analysis, is found in the Table

in Defendant's motion, (Dkt. 11-1 at 13-18), purporting to show that "[c]laim 1 of each Asserted Patent recites the abstract idea of receiving, storing, and controlling access to a patient's health information."  Yet this Table clearly shows that Defendant's verb-happy distillation of the claims into "receiving, storing, and controlling access to a patient's health information" ignores the vast majority of the actual claim language, including structural components and their configuration that enable the claimed methods of associating authorization levels to discrete portions of a patient's electronic medical records to limit access and/or modification of specific portions of the electronic medical records to specific users.

Notably missing entirely from Defendant's three-step overgeneralized characterization of the claims are several critical structures recited in that claim language itself including:  (1) a patient account "being associated with *data storage area configured to store the patient's personal health information*;" (2) "one or more pieces of the patient's personal health information received by the patient, *thereby creating a PHR for the patient*" in "*the data storage area associated with the account established for the patient*;" (3) "the *patient established control settings* being configurable by the patient via the first client computer, wherein the patient-established control settings *enable the patient to restrict access to the patient's personal health information to one or more designated requesters*;" (4) "the access request being accompanied *by an identifier for the patient and authorization information* to obtain *at least a portion of the patient's PHR*;" and (5) *automatically notifying* the patient "*if the patient's PHR is changed*."  (Dkt. No. 11-1 at 13-18.)[1]  Only by overemphasizing just three verbs and ignoring the substance of the asserted claims as a whole can Defendant argue the claims are directed to an abstract idea.

---

[1] Emphasis Plaintiffs' unless otherwise noted.

Defendant argues "[a]ll of the steps of these claims could be performed by a human with a filing cabinet" allegedly indicating the claim is directed to an abstract idea. Dkt. 11-1 at 18 (citing *Intellectual Ventures I LLC & Intellectual Ventures II LLC v. J. Crew Group, Inc.*, No. 6:16-CV-196-JRG, 2016 WL 4591794, at *5 (E.D. Tex. Aug. 24, 2016) and *People.ai, Inc. v. Clari Inc*., No. 2022-1364, 2022-1366, 2023 WL 2820794, at *11 (Fed. Cir. Apr. 7, 2023).  But a human with a filing cabinet would not have the benefit, as both disclosed and claimed in the Asserted Patents, of an electronic health record system that automatically makes authorization determinations based on the association of a patient's electronic health record and the authorization level for users to access and/or modify a discrete portion of that patient's electronic health records.  A human with a filing cabinet would not have patient-approved pre-authorization codes associated with electronically stored health records on an information-object basis, as disclosed and claimed in the Asserted Patents.

### 2.    Defendant's *Alice* Step One Case Law Analysis is Infected By Its Overgeneralization of Asserted Patent Claims

Defendant argues that "[c]laims directed to very similar subject matter as the representative claims have been found abstract in other cases." (Dkt. No. 11-1 at 18.) But here again, Defendant's argument is based on the demonstrably wrong premise that the claims are limited to "storing and controlling access to information" and ignoring the specific structures disclosed and claimed in, for example, claim 1 of the '913 patent, which enable performance of the claimed methods to improve the operation of electronic health record systems, and which were later adopted in various statutory and regulatory standards.

Defendant first cites *Pres. Wellness Techs. LLC v. Allscripts Healthcare Sols.*, No. 15-cv-1559, 2016 WL 2742379, at *7, *13 (E.D. Tex. May 10, 2016) as finding patent ineligible claims directed to "computerized systems for maintaining patient medical records—with remote access

for physicians and patients, and certain records accessible only to physicians—were abstract and ineligible under § 101." (Dkt. 11-1 at 18-19.)  But here again, Defendant ignores that in *Pres. Wellness Techs*, "[t]he underlying idea is simply the performance of that function; not a technological solution that enables that function to be performed in a particular manner.  The limitations of claim 1, for example are almost entirely functional in nature."  *Id*. at *24.  Not so with the Asserted Claims which, as discussed repeatedly above, contain a number of structures created, associated, and populated in a specific manner to achieve a specific technological solution to the methods of creation, storage, association, and authorization to access and/or modify specific portions of electronically stored patient health records, as well as specific functions related to automatic patient notifications when such records are accessed, modified, and/or breached.  (E.g., Dkt. 9-1 at claim 1; Dkt. 9-3 at claim 1.)  The asserted claims are therefore not abstract as they were in the *Pres. Wellness Techs* case.

Similarly, Defendant's reliance on *Epic Sys. Corp. v. Decapolis Sys., LLC*, 643 F. Supp. 3d 1347, 1354–56 (S.D. Fla. 2022), (Dkt. 11-1 at 19-20), is misplaced because, as the district court noted there, "Defendant does not cite to, and I cannot find, any claim language to support its assertion that its claims are directed to 'technological improvements.'"  (643 F. Supp. 3d at 1355-56.)  As noted previously, the Asserted Patents here disclose both the problem recognized at time, as well as the technological improvements that the claimed systems and methods provide to electronic health record systems. (Dkt. 9-1 at 2:5-23; 40-61.)  Moreover, the district court also noted in *Epic Sys.* that the patents "did not claim any improvement in the hardware of computers."  *Id*. at 1356.  Consequently, because the Asserted Claims **are** directed to technological improvements in electronic health record systems and claim specific structures and how they

13

interoperate to provide technical improvements in the methods of use of such systems, they are distinguishable and patent-eligible. (Dkt. 9-1 at claim 1; Dkt. 9-3 at claim 1.)

Defendant next argues that "in the Salwan line of cases, the Federal Circuit repeatedly held that claims directed to receiving and storing patient health information are abstract and patent-ineligible" citing *In re Salwan I*[2] and *In re Salwan II*.[3] (Dkt. No. 11 at 20.)  However, the court there explained that the claims "describe[] little more than the automation of a 'method of organizing human activity' with respect to medical information." (*Id*. at 17.)  Here however, the Asserted Patents describe and claim far more than simply automating a method of organizing human activity.  Rather, they expressly disclose problems faced with electronically stored health records, and provide claimed systems and structural components configured to interoperate and provide the improved method of use of electronic health record systems by providing a patient with the ability to assign levels of authorization to specific portions of their electronic health records and associate those authorizations with other users who seek to access and/or modify those discrete portions of the patient's electronic health record.  (E.g., Dkt. No. 9-1 at 2:5-13; 40-61.)  Those systems and methods were later adopted in the statutory and regulatory standards with which Defendant's electronic health record systems admittedly comply.  (Dkt. No. 9 at ¶¶8-16; Dkt. 11-1 at 2.)

Defendant also cites *Web 2.0 Techs., LLC v. 37signals LLC*, 2024 WL 1254221, at *5, (Dkt. 11-1 at 21), where claim 1 of U.S. Patent No. 6,845,448 was considered and Defendant 37signals' Motion to Dismiss was granted.  But as noted previously, the court in the *37signals* case considered claim 1 of the '448 patent—the '913 and '594 patents were ***not*** at issue.  Also, claim 1 of the '448 patent was not directed to the claimed methods of using specific structural components that

---

[2] 681 Fed. Appx. 938 (Fed. Cir. 2017).
[3] 825 Fed. Appx. 862 (Fed. Cir. 2020).

interoperate to provide the specific technical solution to improve use and solve problems associated with authorization to access and modify a patient's electronic health record systems, as disclosed and claimed in the Asserted Patents.  Moreover, the district court's grant of Defendant's Motion to Dismiss was without prejudice to cure the pleadings, and Plaintiffs filed a Second Amended Complaint to address the court's ruling.  (*Web 2.0 Techs., LLC v. 37signals LLC*; Case No. 1:23-cv-00230 (N.D. Ill), Dkt. No. 44.)  The case settled shortly thereafter without considering the Second Amended Complaint, and is therefore of limited value in assessing patent eligibility. (*Id*. at Dkt. No. 50.)

Defendant then cites *Content Extraction & Transmission, LLC*, 776 F.3d 1343, 1347 (Fed. Cir. 2014), arguing that claims are abstract because they "do nothing more than recite conventional and routine steps to carry out the abstract idea of receiving, storing, and controlling access to a patient's health information." (Dkt. No. 11-1 at 21.)  But as noted previously, the Asserted Claims here are directed to far more than simply "receiving, storing, and controlling access" as were the claims before the Federal Circuit in *Content Extraction*.  The Asserted Claims here are directed to specific systems and methods for establishing patient electronic health records in a server, and associating discrete portions of those health records with various levels of authorization which can be tailored by the system to permit other users to access and/or modify certain portions of a given patient's health record, depending upon the other user's level of authorization.  (Dkt. No. 9-1, claim 1; Dkt. No. 9-3, claim 1).  The claimed systems and methods also associate various notification functions which also may be tailored depending on whether a patient's electronic health record has been accessed and modified.  (*Id*.)

Notably, as the Federal Circuit noted in *Content Extraction*, several of the claims before the district court "do not expressly recite any hardware structures," (776 F.3d at 1349), which is

unlike the Asserted Claims that recite numerous structures that Defendant's analysis continues to ignore. (*See* discussion of Defendant's Table *supra* at 9-11.) The Asserted Patents also expressly disclose that, at the time of the invention, such electronic health record systems and methods were not known or conventional. (E.g., Dkt. No. 9-1 at 2:5-13.) The Asserted Patents disclosed the improved systems and methods as helping insure more efficient use of such electronic health record systems by associating discrete authorization levels on discrete portions of the health record systems, thereby eliminating concerns over the security of such systems from unauthorized access and use of such electronically stored health information. (E.g., Dkt. No. 9-1 at 2:40-61.) And, as the Federal Circuit further notes in *Content Extraction*, "[f]or the role of a computer in a computer-implemented invention to be deemed meaningful in the context of this analysis, it must involve more than performance of "well-understood, routine, [and] conventional activities previously known in the industry"—such as the Asserted Claims' recitation of specific system components configured in a specific manner not known previously, to solve a known problem in the industry—precisely the opposite of Federal Circuit's guidance in *Content Extraction*. (776 F.3d at 1347-48.)

Defendant cites *Ericsson Inc. v. TCL Commc'n Holdings Ltd.*, 955 F.3d 1317, 1327 (Fed. Cir. 2020), as finding that the idea of "receiving, storing, and controlling access to" a patient's health information or records is exactly the type of "longstanding commercial practice" and "method of organizing human activity" that falls "squarely within the realm of 'abstract ideas.'" (Dkt. 11-1 at 21.). But the determinations of "longstanding commercial practive" or "implementing an old practice" are factual issues which caution against dismissal at this stage. *See Berkheimer*, 881 F.3d at 1368; *Aatrix Software,* 882 F.3d at 1128; *Pat. Armory*, 2025 U.S. Dist. LEXIS 64057 *4; *Health Discovery Corp. v. Intel Corp.*, 577 F. Supp. 3d 570, 574 (W.D. Tex. 2021).

Defendant cites numerous cases including *Recentive*, 134 F.4th 1205, 1213 (Fed. Cir. 2025), *Enfish*, 822 F.3d 1327, 1339 (Fed. Cir. 2016), *Koninklijke*, 942 F.3d 1143, 1150 (Fed. Cir. 2019), and *Torus Ventures LLC v. Cawley Partners, LLC*, No. 2:24-CV-00552-JRG, 2025 WL 1799327, at *5 (E.D. Tex. June 30, 2025), all for the proposition that "[t]o avoid being an abstract idea, the claims must disclose "a specific implementation of a solution to a problem in the software arts" or "a specific means or method that solves a problem in an existing technological process" and cannot be "result based functional language" that simply describes the desired result at a high level of generality." (Dkt. 11-1 at 21-22.) But this is demonstrably false—it is Defendant that has jettisoned the majority of the actual claim language of the Asserted Claims and persists in improperly characterizing the claims at too high a level of generality. *Nearby Sys. LLC v. Penney Opco LLC*, Civ. A. No. 2:23-cv-00384-JRG-RSP; 2024 U.S. Dist. LEXIS 204762 *3 (W.D. Tex. Sept. 10, 2024) (citing *Alice*, 573 U.S. at 217). As Plaintiffs have maintained throughout, the Asserted Patents disclose and "claim a specific implementation of a solution to a problem in the software arts" and "a specific means or method that solves a problem in an existing technological process" precisely what these cases require for patent eligibility.

### 3.    Defendant's *Alice* Step Two Analysis Fails to Consider the Unconventional System and Method Allowing Authorization to Access Discrete Portions of Electronically Stored Health Information

Similar to its Alice step one analysis, Defendant next states that "the claims do not recite anything "significantly more" than the abstract idea of storing and/or updating, controlling access to, and distributing a patient's personal health record" (Dkt. No. 11-1 at 13-14.) But as before, Defendant continues to ignore the claimed and disclosed arrangement of system components, and their configuration to improve the use of electronic health record systems and overcome the problems and concerns recognized with authorizing access to and/or modifications of a patient's

17

electronic health records.  (Dkt. 9-1 at 2:5-13; 40-61.)  Specifically, the Asserted Patents disclose in the Summary a number of structures that are claimed, not conventional, and permit functionality the resolves a specific problem recognized at the time of invention as disclosed in the specifications:

> The present invention is directed toward a method and system for gathering, storing personal information on a server computer and releasing such information to authorized requesters.  Several types of information are stored for release to different entities with appropriate authorization.  In one aspect, the present invention is directed toward a method of for automatically ***disbursing personal information belonging to a user*** to ***a requestor that is authorized by the user*** by transmitting said personal information from a server computer operated by a service provider, said server coupled to a database, the method comprising the steps of ***establishing an account for the user*** with the server computer; ***assigning an identifier to the user***; entering ***personal information belonging to the user***; said personal information comprising at least one of a ***plurality of information objects***; ***assigning at least one of a plurality of security levels to each information object***; ***storing in the database the user identifier, the information object, and the security level assigned to the information object***; receiving a request message from the requester; said request message including at least ***the user identifier***; retrieving from the database the ***information object pertaining to the user identifier***; securely transmitting the ***information object*** to the requester.  In a further aspect, the invention comprises the steps of presenting an ***authorization*** by the requester, and ***verifying the requester's authorization***."

(Dkt. 9-1 at 2:40-61.)  These specific structures are also disclosed and claimed in the specific context of electronic health record systems in the method claims of the Asserted Patents.  (Dkt. 9-1, claim 1, Dkt. 9-3, claim 1).  And because of these claimed system components and their configuration, the claims provide a specific technical solution to a recognized problem with system operability and security that prevented adoption of conventional electronic health record systems—solutions that were later required under relevant HIPAA/CEHRT/Meaningful Use standards.  (Dkt. No. 9 at ¶¶8-16; Dkt. 11-1 at 2.)

Defendant further argues that components such as a "server computer" and "data storage area" are "generic" and used to perform each of the steps without anything more.  (Dkt. No. 11-1 at 14-15.)  Citing *In re TLI Commc'ns LLC Patent Litigation,* 823 F.3d 607, 615 (Fed. Cir. 2016), Defendant argues "the claims are devoid of any technical explanation as to how to implement the purported invention in an inventive way."  But Defendant continues to ignore the patent specification that explains the problems associated with storing electronic health records and provides a specific technical way to implement the invention to overcome those problems, including associating specific portions of a patient's electronic health records with different authorization levels to prevent unauthorized access to and/or modification of those records.  (Dkt. 9-1 at 2:5-13; 40-61.)

Moreover, the arrangement of known components for use in an unconventional manner can provide inventive concept where, as here, the specification addresses known problems with the known configuration of known components.  *See BASCOM Global Internet Servs. v. AT&T Mobility, LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016) ("As is the case here, an inventive concept can be found in the non-conventional and non-generic arrangement of known conventional pieces.").  In any event, as before, Defendant's characterization of what components and their

arranges are "well known" or "conventional" are factual issues that preclude dismissal at the pleading stage. *See Berkheimer*, 881 F.3d at 1368; *Aatrix Software,* 882 F.3d at 1128; *Pat. Armory*, 2025 U.S. Dist. LEXIS 64057 *4; *Health Discovery*, 577 F. Supp. at 574.

Defendant next argues that "[t]he specifications of both patents discuss only the use of generic, well-known computer and networking components without identifying any novel or improved hardware or database configuration." (Dkt. 11-1 at 15.) But this is demonstrably incorrect as the specifications describe the improved system components, including details of the database configuration that permits associations between discrete portions of a given patient's electronic health record ("information object") and a level of authorization for that discrete portion such that other users can access and/or modify those discrete portions as authorized. (E.g., Dkt. No. 9-1 at 6:10-16; 6:39-43; 7:36-42; 7:63-68; 8:1-6; 9:13-15; 9:26-28; 9:50-58; 10:10-36; 10:45-48; 13:48-52.) The patent specifications expressly disclose that such systems and configurations of the system resolved known problems associated with authorization to access and/or modify electronically stored information, such as patient health record systems. (E.g., Dkt. No. 9-1 at 2:5-13; 40-67.)

Defendant next argues that the Asserted Patents' specifications "do not suggest that the patent provides any kind of technological advance." But again, this is demonstrably false—the patent specifications expressly disclose problems with server systems that store a user's personal information and issues related to unauthorized access to such systems, (Dkt. No. 9-1 at 2:5-13), and solutions to that problem through the specific arrangement and configuration of the claimed systems and methods that permit patients to establish levels of authorization for other users to access and/or modify discrete portions of their electronically stored health information. Notably, problems associated with system security and authorization hindered industry adoption of

electronic health record systems, and were later addressed in the statutory and regulatory standards with which Defendant's systems now comply.  (Dkt. 9 at ¶¶8-16.)

### 4. The First Amended Complaint Alleges That Defendant's Accused Instrumentalities Complied With The Relevant Statutory and Regulatory Standards At All Relevant Times

Defendant argues that Plaintiffs' First Amended Complaint does not allege infringement by Defendant's Accused Instrumentalities during the Asserted Patents' enforcement period because the claim charts cite to Defendant's website as it exists after the Asserted Patents expired. However, as Plaintiffs' First Amended Complaint alleges, Defendant's accused electronic health record systems have been in compliance with all relevant statutory and regulatory standards and criteria since their enactment in 2009.  (Dkt. 9 at ¶¶8-16.)  The citations to Defendant's website is further evidence of Plaintiffs' information and belief that Defendant's electronic health record systems (the Accused Instrumentalities) had those same capabilities and functionalities during the enforcement period of the Asserted Patents, when Defendant's system was in compliance with those standards.  Notably, Defendant admits as much in its motion.  (Dkt. 11-1 at 2.)

## IV. LEAVE TO AMEND

It is well established that "the grant of leave to amend the pleadings pursuant to Rule 15(a) is within the discretion of the trial court." *Zenith Radio Coro. v. Hazeltine Research, Inc.*, 401 U.S. 321, 339 (1971) ("The court should freely give leave when justice so requires."); Rule 15(a)(2).  To the extent the court is inclined to grant Defendant's motion, Plaintiffs respectfully request leave to amend its First Amended Complaint to address any pleading deficiencies.

## V. CONCLUSION

For the reasons set forth above, Defendant's Motion should be denied.

Dated: August 26, 2025                              Respectfully Submitted,

                                                    DEVLIN LAW FIRM LLC

                                                    /s/ Robert Kiddie
                                                    Robert Kiddie (TX Bar. No. 24060092)
                                                    1526 Gilpin Avenue
                                                    Wilmington, Delaware 19806
                                                    Telephone: (302) 449-9010
                                                    Facsimile: (302) 353-4251
                                                    rkiddie@devlinlawfirm.com

                                                    *Attorney for Plaintiffs*

22

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on August 26, 2025, I electronically filed the foregoing with the

Clerk of Court using the CM/ECF system which will send notification of such filing to all

counsel of record.

*/s/ Robert Kiddie*
Robert Kiddie
