UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS

———

No. 6:25-cv-00059

———

**Web 2.0 Technologies, LLC, et al.,**
*Plaintiffs,*
v.
**Longview Regional Medical Center,**
*Defendant.*

———

**O R D E R**

Plaintiffs Web 2.0 Technologies, LLC, and Pennar Software Corporation bring this action alleging that defendant infringed U.S. Patent Nos. 9,465,913 (the '913 Patent) and 9,886,594 (the '594 Patent). Defendant moves to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(1) for one plaintiff's lack of standing and under Rule 12(b)(6) for failure to state a claim. Doc. 14. The court grants the motion to dismiss.

**I.  Federal Rule of Civil Procedure 12(b)(1)**

Under Federal Circuit precedent, only a "patentee" under 35 U.S.C. §§ 100(d) and 281, or a licensee who holds all substantial rights in the patent, has a statutory right to sue for patent infringement. *H.R. Techs., Inc. v. Astechnologies, Inc.*, 275 F.3d 1378, 1384 (Fed. Cir. 2002). The Federal Circuit has characterized the scope of the statutory right to sue as a matter of "standing." *Id.*; *see Abbott Lab'ys v. Diamedix Corp.*, 47 F.3d 1128, 1130–31 (Fed. Cir. 1995) ("Parties not holding title to the patent have been accorded the right to sue (or 'standing') in certain circumstances, but only upon joining or attempting to join the patent owners."). Standing goes to a court's jurisdiction and must be addressed before the merits. *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1551 (Fed. Cir. 1995) (en banc).

The Federal Circuit's characterization is questionable in light of the Supreme Court's more recent precedent holding that "the question whether a plaintiff states a claim for relief goes to the

merits in the typical case, not the justiciability of a dispute." *Bond v. United States*, 564 U.S. 211, 219 (2011) (quotation marks omitted). In contrast, Article III standing is grounded in the Constitution and cannot be modified by statute. *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) ("Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing.") (quotation marks omitted).

So I doubt that the scope of the statutory right to sue for patent infringement is a matter of standing. A plaintiff who alleges that he owns the patent claimed to be infringed likely has Article III standing to be heard on that assertion. A defect in the plaintiff's claim of a statutory right to sue would simply be a failure of his claim on the merits. That would result in a dismissal of the plaintiff's claim with prejudice under Rule 12(b)(6), not without prejudice for lack of jurisdiction under Rule 12(b)(1). Be that as it may, this court must apply the Federal Circuit's characterization of the patent-ownership issue as one going to standing and thus resolved under Rule 12(b)(1). *See H.R. Techs.*, 275 F.3d at 1385 ("a dismissal for lack of standing would ordinarily be without prejudice").

"The word 'patentee' includes not only the patentee to whom the patent was issued but also the successors in title to the patentee." 35 U.S.C. § 100(d). Under that definition, Web 2.0 does not have a statutory right to bring this action. Plaintiffs admit that Pennar retains all rights in the '594 Patent. Doc. 15 at 10. However, plaintiffs claim that Web 2.0 retains interest in the '913 Patent because Pennar "assigned certain rights" to Web 2.0, including in the '913 Patent. *Id*. The assignment documents gave Web 2.0 "the exclusive right to bring suit, collect royalties and do all things necessary to enforce . . . [the '913 Patent] against certain defendants listed in Appendix B." Doc. 15-3 at 4 (cleaned up); *see also id*. at 6 (Appendix B). Defendant's name is not listed in Appendix B. *Id*. at 6. Thus, plaintiff Web 2.0 lacks a right to sue "because [it] do[es] not hold the necessary exclusionary rights."

*Morrow v. Microsoft Corp.*, 499 F.3d 1332, 1341 (Fed. Cir. 2007). Web 2.0's lack of a right to sue cannot be remedied retroactively through a change in the licensing agreement after suit is filed. Each plaintiff possesses standing. *Alps S., LLC v. Ohio Willow Wood Co.*, 787 F.3d 1379, 1384–85 (Fed. Cir. 2015) (holding "patentee" under § 281 is defined at the time suit is filed).

As such, defendant's motion to dismiss Web 2.0 under Rule 12(b)(1) for lack of standing is granted. Its claim is dismissed without prejudice. Plaintiff Pennar, as patentee with the exclusive right of enforcement against defendant, does have standing and is not dismissed under Rule 12(b)(1).

## II. Federal Rule of Civil Procedure 12(b)(6)

To survive a motion to dismiss, a complaint must plead "only enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "In ruling on a motion to dismiss, a court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Davis v. Tarrant Cnty.*, 565 F.3d 214, 217 (5th Cir. 2009) (cleaned up).

As the Federal Circuit has "repeatedly recognized, it is possible and proper to determine patent eligibility under 35 U.S.C. § 101 on a Rule 12(b)(6) motion." *Mobile Acuity Ltd. v. Blippar Ltd.*, 110 F.4th 1280, 1289–90 (Fed. Cir. 2024) (cleaned up). Section 101 eligibility is properly decided on a Rule 12(b)(6) motion "only when there are no factual allegations that, taken as true, prevent resolving the eligibility question as a matter of law." *Beteiro, LLC v. DraftKings Inc.*, 104 F.4th 1350, 1355 (Fed. Cir. 2024) (quoting *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018)).

Patentability under 35 U.S.C. § 101 is a threshold legal issue. *Bilski v. Kappos*, 561 U.S. 593, 602 (2010). Patent-eligible subject matter is defined in § 101 as "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof." 35 U.S.C. § 101. The Supreme Court has excepted "[l]aws of nature, natural phenomena, and abstract ideas" from patentability under § 101. *Alice Corp. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014) (cleaned up).

> Accordingly, in applying the § 101 exception, we must distinguish between patents that claim the building blocks of human ingenuity and those that integrate the building blocks into something more, thereby transforming them into a patent-eligible invention. The former would risk disproportionately tying up the use of the underlying ideas and are therefore ineligible for patent protection. The latter pose no comparable risk of pre-emption, and therefore remain eligible for the monopoly granted under our patent laws.

*Id.* at 217 (cleaned up).

*Alice* established a two-step framework for determining patent-eligibility under § 101. At step one, we determine whether a claim is "directed to a patent-ineligible concept," such as an abstract idea. *Id.* at 218. If so, we determine at step two whether the claim "contains an 'inventive concept' sufficient to 'transform' the claimed abstract idea into a patent-eligible application." *Id.* at 221.

### A. Representativeness

First, claims may be treated as representative for the § 101 inquiry when the patentee "does not present any meaningful argument for the distinctive significance of any claim limitations not found in the representative claim" or upon agreement of the parties "to treat a claim as representative." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1365 (Fed. Cir. 2018). Likewise, claims may be analyzed as "representative" when other claims are "substantially similar and linked to the same abstract idea" of another claim. *Content*

*Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1348 (Fed. Cir. 2014). Plaintiff does not concede that claim 1 of either asserted patent is representative but does not provide any colorful arguments why each claim is not representative. *See* Doc. 15 at 16. Plaintiff only explicitly asserts claim 1 of each patent and only provides an infringement chart for claim 1 of each patent. Doc. 9 at 6–8; *see generally* Docs. 9-2, 9-4.

The '913 Patent has two independent claims, 1 and 7. *See* '913 Patent col. 14 l. 57–col. 17 l. 4. Claims 2–6 depend from claim 1, and claims 8–13 depend from claim 7. *See id.* Claim 7 is substantially identical to claim 1 but covers a "server computer system" rather than a "computer-implemented method." *Compare id.* col. 14 l. 57–col. 15 l. 35 *with id.* col. 15 l. 56–col. 16 l. 47. As in *Alice*, "the system claims are no different from the method claims in substance." 573 U.S. at 226. The dependent claims add only conventional elements. *See* '913 Patent col. 15 l. 36–col. 17 l. 4. Thus, the court finds claim 1 representative of all claims in the '913 Patent.

The '594 Patent has three independent claims—1, 8, and 15. *See* '594 Patent col. 26 l. 45–col. 29 l. 8. For the same reasons as the '913 Patent, claim 1 (*id.* col. 26 ll. 45–67) is representative of all claims in the '594 Patent.

**B. Analysis**

As a matter of law, the asserted patents are directed to a patent-ineligible abstract idea, and the claims do not otherwise provide an inventive step.

### 1. U.S. Patent No. 9,465,913

The '913 Patent "is related in general to electronic information repositories, and in particular, to a system and method for gathering, storing and disbursing personal information to authorized entities via a communication network." '913 Patent col. 1 ll. 21–24. The specification teaches improvements upon "[o]ld methods of collecting and disbursing personal . . . information" by storing all relevant personal information "at a single location and authoriz[ing] the release of such information to any person or

entity." *Id.* col. 2 ll. 13–14, col. 1 ll. 47–48. In essence, the specification discusses the problem—end users having to supply the same personal information to each website they visit (e.g., newspapers, lenders, utility companies, doctor's offices)—and provides a solution—users provide the relevant personal information at a single virtual location and then authorize the release of that information to whichever website services they desire. *See id.* col. 1 ll. 28–64; *see also id.* col. 2 ll. 34–38 ("The present invention is directed toward a method and system for gathering [and] storing personal information on a server computer and releasing such information to authorized requesters.").

Representative claim 1 of the '913 Patent covers:

> 1. A computer-implemented method of permitting access to a patient's personal health record (PHR) stored in an online repository, the method comprising the following steps:
>
>> establishing an account for a patient with a server computer, the account being associated with data storage area configured to store the patient's personal health information;
>>
>> receiving, via a first client computer operated by the patient, one or more pieces of the patient's personal health information;
>>
>> storing, in the data storage area associated with the account established for the patient, the one or more pieces of the patient's personal health information received from the patient, thereby creating a PHR for the patient;
>>
>> associating patient-established control settings with the patient's personal health information stored in the PHR, the patient-established control settings being configurable by the patient via the first client computer, wherein the patient-established control settings enable the patient to restrict access to the patient's personal health information to one or more designated requesters;

>> receiving from a designated requester an access request via a second computer, the access request being accompanied by an identifier for the patient and authorization information to obtain at least a portion of the patient's PHR;
> verifying the authorization information received from the second computer;
> in accord with patient-established control settings, selecting a portion of the patient's PHR; and
> sending to the second computer the selected portion of the patient's PHR stored in patient's account;
> recording each and every access of the patient's PHR;
> enabling access to the patient's PHR in case of a medical emergency involving the patient;
> receiving and storing updates to the patient's personal health information, the updates being from a party authorized to make such update by the patient; and
> if the patient's PHR is changed, then automatically notifying the patient via an electronic message that a change has been made to the patient's PHR.

*Id.* col. 14 l. 57–col. 15 l. 35. As discussed in part II.A, claim 1 is representative of all 13 claims in the '913 Patent.

### a. *Alice* step one

To determine whether claims are "directed to patent-ineligible subject matter," such as an abstract idea, the court should "look to the character of the claims as a whole," including the patent's specification. *Broadband iTV, Inc. v. Amazon.com, Inc.*, 113 F.4th 1359, 1367 (Fed. Cir. 2024) (citing *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335 (Fed. Cir. 2016)). Under *Alice* step one, the inquiry "often turns to the question of what the patent asserts as the claimed advance over the prior art." *Id.* In other words, "whether the claims in these patents focus on a specific means or method that improves the relevant technology or are instead directed to a result or effect that itself is the abstract idea and merely invoke generic processes and machinery." *McRO, Inc. v. Bandai*

*Namco Games Am. Inc.*, 837 F.3d 1299, 1314 (Fed. Cir. 2016) (citing *Enfish*, 822 F.3d at 1336).

The '913 Patent is directed towards the abstract idea of receiving, storing, and controlling access to a patient's health information. To determine whether claims are directed towards an abstract idea at step one, "both [the Federal Circuit] and the Supreme Court have found it sufficient to compare claims at issue to those claims already found to be directed to an abstract idea in previous cases." *Enfish*, 822 F.3d at 1334.

Claim 1 discloses a method of creating a virtual storage folder for a patient, allowing the patient to provide information to that storage folder, storing that information, allowing the patient to control who can access that information, disbursing the patient's information to parties granted access, recording when information was disbursed, automatically notifying the patient of changes, and allowing access in the event of a medical emergency. *See* '913 Patent col. 14 l. 57–col. 15 l. 35.

These are nothing more than "well-known" concepts that "humans have always performed." *Content Extraction*, 776 F.3d at 1347 (holding asserted patent invalid under § 101 because "banks have, for some time, reviewed checks, recognized relevant data such as the amount, account number, and identity of account holder, and stored that information in their records.") Here, as in *In re Salwan*, "[r]epresentative claim 1 recites storing, communicating, transferring, and reporting patient health information in a network. . . . This describes little more than the automation of a 'method of organizing human activity' with respect to medical information." 681 F. App'x 938, 941 (Fed. Cir. 2017) (per curiam) (quoting *Alice*, 573 U.S. at 220). "The 'concept of record access and management' is an abstract idea, even as applied in the particular context of medical records." *Pres. Wellness Techs. LLC v. Allscripts Healthcare Sols.*, No. 2:15-cv-01559, 2016 WL 2742379, at *7 (E.D. Tex. May 10, 2016) *aff'd mem. per curiam*, 684 F. App'x 970 (Fed. Cir. 2017) (collecting cases).

Plaintiff argues that the claims are not directed to an abstract idea because of "several critical structures recited in" claim 1 that "are directed to specific real-world solutions to technical problems associated with improving use of electronic health record systems." Doc. 15 at 16–17. These "critical structures" include:

- a "data storage area configured to store the patient's personal health information";
- a personal health record (PHR) created by "one or more pieces of the patient's health information received by the patient";
- "patient established control settings" that "enable the patient to restrict access to the patient's personal health information to" requesters;
- "an identifier for the patient and authorization information to obtain at least a portion of the patient's PHR"; and
- an automatic notification "if the patient's PHR is changed."

*Id.* at 17.

However, the mere listing of structures in a claim is insufficient to overcome a § 101 challenge. Indeed, under *Enfish*, "the first step in the *Alice* inquiry . . . asks whether the focus of the claims is on the specific asserted improvement in computer capabilities . . . or, instead, on a process that qualifies as an 'abstract idea' for which computers are invoked merely as a tool." 822 F.3d at 1335–36. In *Enfish*, the disclosure taught "improve[ments] upon prior art information search and retrieval systems by employing a flexible, self-referential table to store data." *Id.* at 1337 (quoting U.S. Patent No. 6,151,604 col. 2 ll. 44–46). Here, the specification teaches using computers to store, access, and disburse personal health information. '913 Patent col. 1 l. 55–col. 2 l. 39. It does not improve upon computer technology but rather relies on the "ubiquity of the public computer networks" and lists known components of computer architecture. *Id.* col. 1 ll. 55–64, col. 3 ll. 30–49, col. 4 ll. 23–55, col. 5 ll. 10–25, col. 8 ll. 13–40, col.

13 l. 59–col. 14 l. 35. "In other words, the specification does not support a finding that the claims are directed to a technological improvement in computer . . . functionality." *Trinity Info Media, LLC v. Covalent, Inc.*, 72 F.4th 1355, 1364 (Fed. Cir. 2023).

Further, the '913 Patent's "critical structures" are not "improved concrete tools or methods by which . . . processing functionality is achieved"; instead, claim 1 lists structures "associated with high-level, broadly articulated, result-defined information-processing functionality." *Impact Engine, Inc. v. Google LLC*, No. 2022-2291, 2024 WL 3287126, at *6 (Fed. Cir. July 3, 2024) (unpublished). Plaintiff counters that the '913 Patent teaches "an electronic health record system that automatically makes authorization determinations based on the association of a patient's electronic health record and the authorization level for users." Doc. 15 at 18. That may be so, but mere automation of processing medical records is still directed to an abstract idea. *See Credit Acceptance Corp. v. Westlake Servs.*, 859 F.3d 1044, 1055 (Fed. Cir. 2017) ("[M]ere automation of manual processes using generic computers does not constitute a patentable improvement in computer technology.").

Because the '913 Patent claims "a desired result without any limitation on how to produce that result" using generic computer technology, the '913 Patent is directed to an abstract idea under *Alice* step one. *In re Killian*, 45 F.4th 1373, 1382 (Fed. Cir. 2022) (cleaned up); *see also* '913 Patent col. 1 ll. 55–64, col. 3 ll. 30–49, col. 4 ll. 23–55, col. 5 ll. 10–25, col. 8 ll. 13–40, col. 13 l. 59–col. 14 l. 35.

### b. *Alice* step two

At *Alice* step two, the court considers whether the claims contain an "inventive concept . . . that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Alice*, 573 U.S. at 217–18 (cleaned up). "A claim that recites an abstract idea must include additional features to ensure that the claim is more than a drafting effort designed to monopolize the abstract idea." *Id.* at 221

(cleaned up). For example, in *Mayo*, "methods for determining metabolite levels were already 'well known in the art,' and the process at issue amounted to 'nothing significantly more than an instruction to doctors to apply the applicable laws when treating their patients.'" *Id.* at 221–22 (quoting *Mayo Collaborative Servs. v. Prometheus Lab'ys, Inc.*, 566 U.S. 66, 79 (2012)). So too in *Alice*, where "the claims at issue amount[ed] to nothing significantly more than an instruction to apply the abstract idea of intermediated settlement using some unspecified, generic computer." *Id.* at 225–26 (cleaned up).

The claims in the '913 Patent amount to nothing more than organizing and disbursing medical records using generic computer architecture. To be sure, *Alice* itself describes "electronic recordkeeping" as "one of the most basic functions of a computer." *Id.* at 225. Here, claim 1's method of organizing medical records includes nothing more than functional limitations and, likewise, "the specification limits its discussion of these components to abstract functional descriptions devoid of technical explanation as to how to implement the invention." *In re TLI Comm'ns LLC Patent Litig.*, 823 F.3d 607, 615 (Fed. Cir. 2016).

"[A]n inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional pieces." *BASCOM Glob. Internet Servs. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016). The claimed "server computer" is described in the specification using known, even trademarked, generic components. '913 Patent col. 3 ll. 24–49. The specification also provides examples of the "data storage area" such as "products includ[ing] those marketed by the Oracle Corporation" and does not teach technical advancements to data storage. *Id.* col. 4 ll. 5–10; *see also* col. 14 ll. 35–44. The remaining structures are no less generic. *See Web 2.0 Techs., LLC v. 37signals LLC*, No. 1:23-cv-00230, 2024 WL 1254221, at *7 (N.D. Ill. Mar. 25, 2024) (invalidating U.S. Patent No. 6,845,448, which is the parent patent to both asserted patents and shares a common specification with the '913 Patent, and explaining that "the specifications . . . do not

demonstrate that the [teachings] are in any way non-conventional or non-generic."). There is nothing in the '913 Patent specification that transforms these generic components into something more. *See id.* "Such vague, functional descriptions of server components are insufficient to transform the abstract idea into a patent-eligible invention." *TLI Comm'ns*, 823 F.3d at 615.

As such, the '913 Patent provides no inventive step under *Alice* step two. *See Alice*, 573 U.S. at 225 ("In short, each step does no more than require a generic computer to perform generic computer functions."). The '913 Patent is invalid under 35 U.S.C. § 101.

### 2. U.S. Patent No. 9,886,594

As a matter of law, the '594 Patent is directed to the patent-ineligible abstract idea of receiving, storing, and controlling access to a patient's health information, and the claims of the '594 Patent do not provide an inventive step.

Plaintiff does not provide distinct arguments for the '594 Patent as opposed to the '913 Patent. "[S]eparate patents describe separate and distinct inventions and it can not be presumed that related patents rise and fall together." *Comair Rotron, Inc. v. Nippon Densan Corp.*, 49 F.3d 1535, 1539 (Fed. Cir. 1995) (cleaned up). However, plaintiff cites the '594 Patent only in tandem with the '913 Patent. *See* Doc. 15 at 19–21, 25. This makes sense, considering the '594 Patent provides no meaningful additional limitations not present in the '913 Patent. *Compare* '594 Patent col. 26 ll. 45–67 *with* '913 Patent col. 14 l. 57–col. 15 l. 35. "[I]f the patentee does not present any meaningful argument for the distinctive significance of any claim limitations," courts may consider a substantially similar claim as representative. *Berkheimer*, 881 F.3d at 1365.

Although the court does not treat claim 1 of the '913 Patent as representative of all claims in the '594 Patent, further analysis on the '594 Patent is unnecessary due to the striking similarities between claim 1 of each patent. *Compare* '594 Patent col. 26 ll. 45–67 *with* '913 Patent col. 14 l. 57–col. 15 l. 35. As the '913 Patent is invalid under 35 U.S.C. § 101, and the parties "do not address the

patents separately," the court also finds that the '594 Patent is invalid under § 101 for substantially "the same reasons as above." *Cambridge Mobile Telematics, Inc. v. Zendrive, Inc.*, No. 1:22-cv-01260, 2023 WL 6295338, at *7 (D. Del. Sep. 27, 2023) (finding a second patent invalid when the patentee did not provide separate objections to the magistrate judge's report and recommendation); *see also supra* Part II.B.1.

### III. Conclusion

Defendant's motion to dismiss (Doc. 14) is granted. Plaintiff Web 2.0's claims are dismissed without prejudice under Rule 12(b)(1) for lack of standing. Plaintiff Pennar's claims are dismissed with prejudice under Rule 12(b)(6).

Leave to amend the complaint is denied. Because Pennar has already amended its complaint once and because both patents-in-suit teach using routine computer equipment to apply an abstract idea, any further amendments to the complaint would be futile. *See Sanderling Mgmt. v. Snap Inc.*, 65 F.4th 698, 706 (Fed. Cir. 2023) ("No amendment to a complaint can alter what a patent itself states."). Any pending motion is denied as moot, and a final judgment will issue forthwith.

*So ordered by the court on December 8, 2025.*

J. CAMPBELL BARKER
United States District Judge